Laurie Mallone LEE, Appellee,

v.

C. Joseph GIANGRECO, Appellant.

No. 91–208.

Supreme Court of Iowa.

Sept. 23, 1992.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., and John M. Parmeter, Sp. Asst. Atty. Gen., for appellant.

Becky S. Knutson of Sayre & Gribble, P.C., Des Moines, for appellee.

Considered by SCHULTZ, P.J., and LAVORATO, NEUMAN, SNELL and ANDREASEN, JJ.

NEUMAN, Justice.

Plaintiff Laurie Mallone Lee's career as a teacher at the Iowa School for the Deaf (ISD) ended abruptly when a steep decline in enrollment compelled the superintendent, defendant C. Joseph Giangreco, to reduce the size of his staff. The question is whether Giangreco's decision to terminate Lee afforded her the procedural and substantive due process protections to which she was entitled as a tenured teacher and state employee. From jury verdicts finding Lee's rights abridged, Giangreco has appealed. We affirm.

Lee taught industrial arts at ISD from August 1978 through May 1987. In addition to her industrial arts certification, Lee was certified to teach science, math, social studies, and language arts in grades seven through twelve. Her proficiency in Ameri-

can Sign Language enabled her to teach deaf students.

While employed at ISD, Lee taught a range of industrial arts courses including woods, light metals, sheet metal, crafts, general shop, vocational workshops, basic skills for mentally handicapped students, and leather working. Her speciality, and the area to which she devoted the greatest amount of time, was drafting. Although she worked mainly with junior and senior high students, she was occasionally assigned to work with primary grade students. She was the only woman on the seven-member industrial arts staff. At all times pertinent to this appeal, she received favorable evaluations from supervisors and students alike.

During Lee's tenure ISD suffered a dramatic decline in enrollment. From a high of 430 students in 1978, the student population had dropped to 130 by 1986.

In March 1987, Lee received a letter from Giangreco which terminated her contract as a teacher effective at the end of the 1986–87 academic year. The letter gave no reason for the termination other than to say he had "completed reviewing the staffing requirements" for the coming year and Lee's "services as a full-time teacher will not be needed." The letter did, however, advise Lee of her right to meet with Giangreco privately "regarding this termination" and of her right to appeal his decision to the Iowa Board of Regents.

Lee exercised her option to meet privately with Giangreco. The proceedings were transcribed informally by his secretary. When asked why she was chosen to be terminated, Giangreco replied that only one drafting teacher was needed. He also asserted that seniority played a role in his decision. With respect to Lee's relative seniority within the department, Giangreco mentioned that three or four other teachers hired contemporaneously with her were "doing critical things in coaching as well as teaching" and that also affected his decision.

In April 1987, Lee's attorney appeared before the Iowa Board of Regents to contest Giangreco's decision. She argued that because her client was terminated without stated reasons, she had been unable to mount a proper challenge to the decision prior to her meeting with Giangreco. Thereafter, Giangreco put his reasons for Lee's termination in writing. By letter dated May 1, 1987, Giangreco told Lee that two other industrial arts teachers with similar seniority, Hambright and Gradoville, had additional credentials in driver's education and physical education that made them more versatile staff members than Lee. No mention was made of Lee's credentials in math, science, social studies, and language arts. The regents ultimately denied Lee's appeal and affirmed Giangreco's decision to terminate her contract.

Lee subsequently brought this action under 42 U.S.C. section 1983. (1986) alleging deprivation of procedural and substantive due process, and a claim of gender-based employment discrimination. The section 1983 claims were tried to a jury; Lee's claim of discrimination was simultaneously tried to the district court. After the jury returned verdicts in Lee's favor, Giangreco filed motions for judgment notwithstanding the verdict, remittitur, and new trial. The district court denied those motions and this appeal followed.[1]

Four issues are raised by Giangreco on appeal: (1) Did the district court err by denying defendant's motion for judgment notwithstanding the verdict on Lee's procedural due process claim? (2) Did the court err when it instructed the jury that Lee's right to substantive due process was violated if her termination was without good cause? (3) Did the court err by denying defendant's motion for judgment notwithstanding the verdict on Lee's substantive due process claim? (4) Did the district court err by refusing to order a new trial or remittitur because the jury's award was excessive?

Our review is for the correction of errors at law. Iowa R.App.P. 4. As we consider Giangreco's challenge to the dis-

---

1. No appeal has been taken from the court's denial of Lee's sex discrimination claim.

trict court's refusal to grant him judgment notwithstanding the verdict on both the procedural and substantive due process claims, we are obliged to view the evidence in the light most favorable to Lee. *Winter v. Honeggers' & Co.*, 215 N.W.2d 316, 321 (Iowa 1974). She is entitled to every legitimate inference that may be fairly drawn from the evidence. *Id.* Viewing the evidence in this light, we must affirm the judgment if there is substantial evidence in the record supporting each element of Lee's claim. *Valadez v. City of Des Moines,* 324 N.W.2d 475, 477 (Iowa 1982).

■ I. *Procedural due process.* The parties do not dispute Lee's status as a nonprobationary state employee with a continuing contract of employment. Nor do they dispute that Lee's status gave her a protected property interest in continued employment which triggered due process protections upon her termination. *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548, 560–61 (1972). The first question is what pretermination procedures were required to comport with these due process protections.

The United States Supreme Court has described the "root requirement" of the due process clause as the "opportunity for hearing *before* [an individual] is deprived of any significant property interest." *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113, 119 (1971). In the context of an employment termination, the Court has observed that the timing of the process may be crucial:

> Even where the facts are clear, the appropriateness or the necessity of the discharge may not be; in such cases, the only meaningful opportunity to invoke the discretion of the decision-maker is likely to be *before* the termination takes effect.

*Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 543, 105 S.Ct. 1487, 1494, 84 L.Ed.2d 494, 504–05 (1985) (emphasis added). The Court in *Loudermill* went on to hold that proposed action against a tenured public servant entitles the employee to oral or written notice of the charges precipitating the termination, an explanation of the employer's evidence, and an opportunity to present the employee's side of the story. *Id.* at 546, 105 S.Ct. at 1495, 84 L.Ed.2d at 506. The Eighth Circuit Court of Appeals has recognized that the minimum due process required for even the most informal termination procedure must include:

> 1. Clear and actual notice of the reasons for termination in sufficient detail to enable him or her to present evidence relating to them;
>
> 2. Notice of both the names of those who have made allegations against the teacher and the specific nature and factual basis for the charges;
>
> 3. A reasonable time and opportunity to present testimony in his or her own defense; and
>
> 4. A hearing before an impartial board or tribunal.

*Agarwal v. Regents of the Univ. of Minn.,* 788 F.2d 504, 508 (8th Cir.1986); *King v. University of Minn.,* 774 F.2d 224, 228 (8th Cir.1985); *Brouillette v. Board of Directors of Merged Area IX,* 519 F.2d 126, 128 (8th Cir.1975).

It is against this backdrop that we consider the parties' contentions. Giangreco concedes that his initial letter to Lee gave no reason why she was singled out as the object of the necessary staff reduction. But he contends that Lee's subsequent opportunity to meet with him personally, and her later chance to appeal his decision to the board of regents, satisfies the pretermination hearing standard of *Loudermill.*

Crucial to Giangreco's position is his view that the termination was not effective until final decision by the regents. Lee, on the other hand, argued before the jury—and reiterates on appeal—that Giangreco's March 11 letter expressed a "fait accompli," not proposed action. Thus she claims she was denied her "only meaningful opportunity to invoke the discretion of the decision-maker." *Loudermill,* 470 U.S. at 543, 105 S.Ct. at 1494, 84 L.Ed.2d at 504–05.

The jury resolved this factual controversy in Lee's favor. In answer to special

interrogatories, the jury responded as follows:

Q. Do you find that plaintiff was given written or oral notice of the decision to terminate her employment before the decision was made? A. No.

Q. Do you find the plaintiff was given the opportunity to present her position in regard to the decision to terminate her employment before the decision was made? A. No.

Substantial evidence in the record supports the jury's findings. The March letter of termination was unequivocal in its expression of finality. Moreover, since the letter gave no reasons for Lee's selection, the jury could reasonably find she was unfairly prevented from mustering evidence favoring a different outcome. The record plainly revealed that hiring and firing decisions at ISD rest with the superintendent, not the board of regents. The regents' approval of these decisions is a formality only. Thus the appearance granted Lee's counsel before the board of regents was clearly intended as an appeal from the superintendent's final decision, not a pretermination hearing.

The essence of Lee's case is that had she been given a meaningful opportunity to counter Giangreco's perception of her value as a staff member *prior* to his termination decision, the outcome would have been different. We conclude a reasonable jury could find under this record that Giangreco's failure to protect Lee's procedural due process rights under these circumstances violated 42 U.S.C. section 1983. We find no error in the district court's refusal to grant Giangreco judgment notwithstanding the verdict on this claim.

■ II. *Jury instruction.* Among the instructions given on Lee's substantive due process claim, the court told the jury that "[a] decision is arbitrary or capricious if it is done without good cause." Giangreco contends the instruction was erroneously given. Since he tendered proof that his decision was driven by economic forces, Giangreco argues the court was required to find as a matter of law that the "good cause" standard was met.

It is true that "just cause" for termination of a teacher's contract may turn on budgetary constraints and declining enrollments which force school administrators to choose between otherwise "faultless" teachers. *See Smith v. Board of Educ. of Mediapolis School Dist.,* 334 N.W.2d 150, 152 (Iowa 1983); *Briggs v. Board of Directors of Hinton Community Sch. Dist.,* 282 N.W.2d 740, 742 (Iowa 1979). That is not to say, however, that such reductions for "cause" are necessarily free from arbitrary decision-making. Thus in *In re Waterloo Community School District,* 338 N.W.2d 153 (Iowa 1983), we rejected a school board's refusal to explain specific staff reductions just because they were not fault oriented. We held that school administrators may be called upon to articulate an objective basis for the selection, specifically for the purpose of verifying that the decision was based on rational and legitimate criteria. *Id.* at 155–56; *see also Smith,* 334 N.W.2d at 152 (courts must be wary of school boards using staff reduction as a pretext for unlawful discharge).

The gist of Giangreco's argument seems to be that courts should not second-guess a school administrator's decision. *Cf. Smith,* 334 N.W.2d at 153 (courts should be "reluctant to act as super school boards"). This appeal is not before us, however, on judicial review of school board action. Lee's case rests on alleged due process violations resulting in compensable injury. Giangreco's reliance on the deferential "some evidence" test applied in state prison disciplinary cases, *see, e.g., Wilson v. Farrier,* 372 N.W.2d 499, 500 (Iowa 1985), simply has no application to the case before us.

The assignment of error is without merit.

■ III. *Substantive due process.* Giangreco next asserts that the court erred by refusing to grant his motion for judgment notwithstanding the verdict on Lee's substantive due process claim. The specific finding by the jury on this issue was as follows:

Q. Do you find that the plaintiff's employment was terminated as part of staff reduction procedures due to declin-

ing enrollment, budget restrictions, and staff flexibility? A: No.

Giangreco claims there is no support for this finding in the record. He insists that the sole factors motivating Lee's termination were budget restrictions and declining enrollment. Further, Giangreco contends that the only credible evidence in the record shows that Lee was recommended for termination by her principal because she offered less flexibility in future staffing needs when compared to the other two industrial arts teachers with comparable seniority.

The jury apparently drew different inferences from the record. Our review of the record persuades us that substantial evidence supports the jury's finding.

Lee tendered proof that she was periodically subjected to denigrating remarks and questionable conduct on the part of her principal and other male faculty members. Besides containing foul language, these demeaning gender-based comments revealed particular skepticism about the professional goals of staff members, like Lee, who became pregnant. Taken individually, Lee did not believe these comments warranted much attention. But over the years she surmised that she was also treated less favorably than her male colleagues with respect to scheduling and course assignments. Persuasive evidence in the record supports her allegation.

Further challenging the integrity of Giangreco's decision, Lee tendered proof that neither Gradoville nor Hambright held the additional certifications that allegedly made them more "flexible" staff members. Lee testified that after receiving Giangreco's May letter she queried Hambright who admitted to her that he was not certified to teach driver's education; she testified, without contradiction, that she understood Gradoville was not certified to teach physical education. The record plainly revealed that neither had taught those subjects during Lee's nine-year tenure at ISD. Moreover, Giangreco's explanation that only one drafting teacher was needed calls Lee's dismissal into question because she was the only staff member teaching drafting at the time.

Finally, the record reveals that ISD had no set policy or standards to apply in the event of a reduction in force. There was no collective bargaining agreement in effect at the time. But the record revealed that twenty-seven other faculty members had less seniority than Lee and were not terminated. Without a showing of objective criteria for staff reduction, this court has previously observed the difficulty in determining whether an administrator's decision rests within the broad area of permissible discretion or is based on some petty vendetta or prohibited classification such as race, gender, religious preference, or political persuasion. *See Waterloo Community Sch. Dist.*, 338 N.W.2d at 156.

Taking the record as a whole, we believe a reasonable jury could refuse to accept the reasons given by Giangreco for Lee's termination. The jury was not compelled to credit his testimony to the exclusion of Lee's. Given Lee's proof of sexism within the department, Giangreco's failure to define objective criteria for staff reduction in advance of Lee's termination, and the apparent inconsistencies in his judgment about her dismissal, we find no error in the court's refusal to set aside the jury's verdict.

IV. *Damages.* The jury awarded Lee $150,000 on her claim of lost wages, impairment of future earning capacity, and emotional distress. Because the record revealed that only $72,000 of the award represented wages lost up to the time of trial, Giangreco argues the remainder must be ascribed to compensation for emotional injury. This, Giangreco argues, is a verdict clearly in excess of any credible evidence presented on such a claim. Thus he cites error in the court's refusal to either order a remittitur or grant a new trial.

Were emotional upset and anxiety the only factors supporting the jury's verdict, then we might see the merit in appellant's argument. There was little, if any, evidence offered concerning this claim. But as the district court wisely noted, the termi-

nation's impact on Lee's future employment was also at issue. It was compensation for this loss—not for emotional injury—that prompted the court to rule that the jury's award was not only reasonable but, in its words, "conservative."

Substantial evidence supports the court's ruling. In the nearly four years between the termination and trial, evidence showed that Lee was unable to obtain comparable work despite the submission of over 100 applications for employment. Future prospects looked no better despite her aggressive pursuit of other jobs and additional education. Repeated attempts by Lee to mitigate her loss by applying for vacancies at ISD were unavailing. Given the fact that this experienced teacher of the deaf had been without a full-time job within her profession for over three and one-half years, a jury could reasonably conclude that her prospects for re-employment were diminishing with each passing month.

Assessment of damages is traditionally left to the sound discretion of a jury. *Olsen v. Drahos*, 229 N.W.2d 741, 742 (Iowa 1975). We will depart from that tradition only when the verdict is (1) flagrantly excessive or inadequate; (2) so out of reason as to shock the conscience or sense of justice; (3) presumptively the result of passion, prejudice or other ulterior motive; or (4) lacking in evidentiary support. *Id.*

None of the foregoing factors has been convincingly shown by appellant here. We are confident that the district court, having heard firsthand the witnesses called on each side of the controversy, was in the best position to assess the credibility of Lee's claims and her resultant injury. Finding no reason to fault that assessment, we affirm the judgment of the district court in all respects.

AFFIRMED.