Priscilla M. WAITEK and Marc Waitek, Plaintiffs,

v.

DALKON SHIELD CLAIMANTS TRUST, Defendant.

No. C 85–3051–MWB.

United States District Court, N.D. Iowa, Central Division.

July 31, 1996.

As Amended Aug. 14, 1996.

Richard J. Barry of Montgomery, Barry & Bovee, Spencer, Iowa, and William E. Kunze, Castle Rock, Colorado, for Plaintiffs.

Robert D. Houghton of Shuttleworth & Ingersoll, P.C., Cedar Rapids, Iowa, and Robert C. Tucker, Arter & Hadden, Cleveland, Ohio, for Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S POST–TRIAL MOTIONS

BENNETT, District Judge.

TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ................................. 1074
II. THE TRUST'S MOTION PURSUANT TO FED.R.CIV.P. 50(b) ............... 1076
 A. Applicable Standards ......................................... 1076
 1. Procedural requirements ................................... 1076
 2. Evidentiary standard ..................................... 1077
 B. The Trust's Grounds For Judgment As A Matter Of Law ............. 1078
 1. Causation and Dr. Dunker's testimony ....................... 1078
 a. Waiver .............................................. 1079
 i. McKnight. ......................................... 1080
 ii. Other jurisdictions. ................................. 1080
 iii. The Trust's failure to timely object. ..................... 1081
 iv. Plain error. ........................................ 1083
 b. Sufficiency of the evidence ................................ 1083
 i. Standards for expert testimony. ......................... 1084
 ii. Applicability of Sorensen. .............................. 1086
 iii. Applicability of McKnight. .............................. 1087
 iv. Dr. Dunker's opinions. ................................ 1089
 2. Adoption expenses ....................................... 1091
 3. Past hospital and medical expenses .......................... 1091
III. THE TRUST'S MOTION FOR NEW TRIAL ........................... 1092
 A. Applicable Standards ......................................... 1092
 B. The Trust's Grounds For New Trial ............................. 1093
 1. Causation and Dr. Dunker's testimony ....................... 1093
 2. Jury instruction on proximate cause ......................... 1094
 a. Applicable law. ........................................ 1094
 b. Review of Final Jury Instruction No. 18 ..................... 1096
 3. Court's denial of the Trust's motion for mistrial ................. 1097
IV. THE TRUST'S MOTION FOR REMITTITUR ........................ 1098
V. CONCLUSION ................................................ 1100

A familiar adage says, "Better late than never." However, the court observes, sometimes it is just too late. Thus, the maxim may not be enough to save a litigant who has failed to make a timely objection to the introduction of evidence.

In the post-trial motions following a jury verdict for the plaintiffs in this products liability suit, the defendant implores the court to exercise a "gatekeeping role" pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and reject the opinions and testimony of plaintiffs' expert and thus set aside the jury verdict. Complicating defendant's request is its admitted but no less surprising failure to contemporaneously object to the admissibility of and basis for the expert's opinions at the time they were offered. Having neglected to raise its objections pursuant to the standards for expert testimony set forth in Federal Rule of Evidence 702 and *Daubert* at any time prior to trial or at the time the opinions were offered on direct examination, defendant now bases its renewed motion for judgment as a matter of law and its motion for new trial on the ground that the expert's opinion is so fundamentally unsupported by the evidence of record on the issue of causation that it must be rejected. Plaintiffs resist defendant's objections to their expert as untimely. In the alternative, plaintiffs assert this case primarily involved a classic battle of the experts. Despite defendant's attempts to impeach and discredit plaintiffs' expert, the jury, as the finder of fact, found their expert to be more credible on the issue of causation; thus, the jury's verdict in favor of the plaintiffs should not be disturbed.

Besides its objections to the opinions of plaintiffs' expert, defendant has raised numerous additional issues in its post-trial motions. As further grounds for its renewed motion for judgment as a matter of law, defendant contends the jury's award of damages for the plaintiffs' out-of-pocket expense incurred in adopting their two children is violative of Iowa public policy. In addition, defendant asserts that, under Iowa law, the plaintiffs cannot recover past hospital and medical expenses which have been covered by insurance. In addition to its assertion that Dr. Dunker's opinion on causation is unsupported by the evidence of record and, as such, warrants a new trial, defendant also claims the court should grant a new trial based upon the court's alleged errors in instructing the jury on proximate cause and in denying defendant's motion for mistrial. Lastly, defendant moves for remittitur of the jury verdict, contending that the amount awarded to the plaintiffs was excessive.

## I. INTRODUCTION AND BACKGROUND

This post-trial opinion follows a jury verdict for the plaintiffs, Priscilla and Marc Waitek, in which the jury found that Priscilla Waitek's use of the Dalkon Shield IUD ("Dalkon Shield") was a proximate cause of her injuries and awarded her compensatory damages in the amount of $373,534.31. In addition, the jury found that Priscilla Waitek's use of the Dalkon Shield was a proximate cause of Marc Waitek's loss of spousal consortium and awarded him damages for past loss of consortium in the amount of $35,000.00. This five-day jury trial in June of 1996 was the culmination of a lawsuit filed by the Waiteks eleven years ago on April 5, 1985. Before discussing the resolution of the Waiteks' claims against the defendant, the Dalkon Shield Claimants Trust ("the Trust"), and the Trust's subsequent post-trial motions, the court will briefly review the sequence of events precipitating the trial.

The Waiteks filed a petition in the Iowa District Court for Cerro Gordo County on April 5, 1985, asserting claims against defendant A.H. Robins Company ("Robins"), the manufacturer of the Dalkon Shield IUD, for negligence, strict liability, breach of implied and express warranties, fraud, and infliction of emotional distress. On May 4, 1985, Robins removed the action to this court based upon diversity of jurisdiction pursuant to 28 U.S.C. § 1441. On August 21, 1985, this case was stayed pursuant to 11 U.S.C. § 362(a), when Robins filed a voluntary petition, under Chapter 11 of the United States Bankruptcy Code, Title 11 U.S.C., in the United States Bankruptcy Court for the Eastern District of Virginia. The bankruptcy court confirmed a plan of reorganization on July 25, 1988, and as part of this plan, the Trust was established to administer the distribution of a fund for Dalkon Shield IUD claimants. The Waiteks completed the claims process, and on July 10, 1994, they were certified by the bankruptcy court to resume their litigation in accordance with Amended Administrative Order Number 1 Governing Dalkon Shield Arbitration and Litigation. On September 19, 1994, the Waiteks amended their complaint in this action to comply with the amended administrative order, substituting the Trust for Robins as the defendant in this case. In their first amended complaint, the Waiteks asserted claims for negligence, strict liability, breach of implied and express warranties, fraud, and infliction of emotional distress.

On August 31, 1995, the Trust moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(b) on the Waiteks' claims, and the Waiteks filed a resistance to that motion. The court denied the Trust's motion on December 8, 1995, finding genuine issues of material fact on the issues raised by the Trust regarding the Waiteks' claims. *See Waitek v. Dalkon Shield Claimants Trust,* 908 F.Supp. 672, 686 (N.D.Iowa 1995). On April 4, 1996, the parties filed an Agreement on Waiver of Proof and Stipulation, in which the parties agreed that the only issues upon which the Waiteks would be required to present proof and the only issues which would be submitted to the jury for resolution were as follows:

a. Have plaintiffs proven, by a preponderance of the evidence, that Mrs. Waitek's use of the Dalkon Shield was a proximate cause of her alleged injuries?

b. If so, what reasonable compensatory damages have Mr. and Mrs. Waitek sustained as a result of Mrs. Waitek's use of the Dalkon Shield?

Thus, in accordance with the parties' agreement, this case went forward to trial solely on the issues of proximate cause and damages.

Trial by jury began on June 3, 1996, in Fort Dodge, Iowa. At the conclusion of the Waiteks' evidence, the Trust made a motion for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(b), and the court denied that motion. The Trust renewed its motion at the conclusion of its own evidence on June 7, 1996, and the court again denied the motion.

On June 11, 1996, the jury returned a verdict in favor of the Waiteks. Specifically, the jury found that Priscilla Waitek's use of the Dalkon Shield was a proximate cause of her injuries. In conjunction with that finding, the jury awarded Priscilla Waitek compensatory damages in the amount of $373,534.31.[1] In addition, the jury found that Priscilla Waitek's use of the Dalkon Shield was a proximate cause of Marc Waitek's loss of spousal consortium and awarded $35,000.00 for his past loss of consortium.[2]

On June 24, 1996, the Trust filed a renewed motion for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(b), a motion for new trial pursuant to *Fed.R.Civ.P.* 59(a), and a motion for remittitur. The Trust's motion for judgment as a matter of law was made on the following grounds: (1) that the jury's finding that the Dalkon Shield was a proximate cause of Priscilla Waitek's injuries was contradicted by the evidence presented at trial; (2) that an award for adoption expenses is not recoverable under the public policy of Iowa; and (3) that the Waiteks' claims for past hospital and medical expenses should not have been allowed under Iowa law. As grounds for its motion for new trial, the Trust asserts that (1) the testimony of plaintiff's expert, Dr. R. Bruce Dunker, was unsupported and contradictory, and the greater weight of the evidence suggests that his conclusions cannot be made to a reasonable medical certainty; (2) the court erred in instructing the jury on proximate cause; and (3) the court erred in denying the Trust's motion for mistrial. Lastly, the Trust moved for remittitur, arguing that the jury's verdict was flagrantly excessive and must be reduced. Specifically, the Trust contended the court should grant remittitur in the amount of $28,109.31, which was the sum of the amount of adoption expenses awarded ($12,275.00) and the amount of the Waiteks' past medical expenses which had been covered by insurance ($15,834.31). On July 3, 1996, the Waiteks resisted the Trust's renewed motion for judgment as a matter of law, its motion for new trial, and its motion for remittitur. The Trust filed a reply to the Waiteks' resistance to its post-trial motions on July 16, 1996.

The court heard oral arguments telephonically on the Trust's post-trial motions on July 16, 1996. The Waiteks were represented by trial counsel Richard J. Barry of Montgomery, Barry & Bovee, in Spencer, Iowa, and William E. Kunze, of Castle Rock, Colorado. Trial counsel Robert D. Houghton of Shuttleworth & Ingersoll, P.C., in Cedar Rapids, Iowa, and Robert C. Tucker of Arter & Hadden, in Cleveland, Ohio, represented the Trust. With this extensive procedural background in mind, the court turns to consideration of the Trust's renewed motion for judgment as a matter of law pursuant to *Fed. R.Civ.P.* 50(b).

---

**1.** This total amount of $373,534.31 was broken down by a special verdict form into the following categories of damages:

1. Past medical expenses ... $ 18,334.31
2. Past lost wages ........... $ 7,925.00
3. Past loss of function of the body ............... $100,000.00
4. Reasonable value of future loss of function of the body ................ $ 0.00
5. Past physical and mental pain and suffering .... $200,000.00
6. Reasonable value of future physical and mental pain and suffering ..... $ 35,000.00
7. Adoption expense ........ $ 12,275.00

TOTAL ................. $373,534.31

**2.** The jury, however, found that Marc Waitek was *not entitled to damages for future loss of consortium.*

## II. THE TRUST'S MOTION PURSUANT TO FED.R.CIV.P. 50(b)

The Trust has renewed its motion for judgment as a matter of law pursuant to *Fed. R.Civ.P.* 50. Before proceeding to the disposition of this motion, the court will first examine the standards for disposition of a motion made pursuant to *Fed.R.Civ.P.* 50(b).

### A. Applicable Standards

Federal Rule of Civil Procedure 50 provides for a post-trial motion for judgment as a matter of law, in relevant part, as follows:

(a) JUDGMENT AS A MATTER OF LAW.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

(b) RENEWAL OF MOTION FOR JUDGMENT AFTER TRIAL; ALTERNATIVE MOTION FOR NEW TRIAL. Whenever a motion for a judgment as a matter of law made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. A motion for a new trial under Rule 59 may be joined with a renewal of the motion for judgment as a matter of law, or a new trial may be requested in the alternative....

*Fed.R.Civ.P.* 50(a) & (b).[3]

### 1. Procedural requirements

Under *Fed.R.Civ.P.* 50(b), a litigant's post-trial motion for judgment as a matter of law on any claim may not be entertained unless the movant previously moved for judgment as a matter of law on that claim at the close of all evidence pursuant to *Fed.R.Civ.P.* 50(a). *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.,* 53 F.3d 195, 197 (8th Cir.1995) (post-trial motion for judgment as a matter of law may not advance additional grounds not raised in pre-verdict motion); *Smith v. Ferrel,* 852 F.2d 1074, 1075 (8th Cir.1988) (record disclosed that no motion for "directed verdict" had been made at the close of all evidence, "appellant therefore cannot question the sufficiency of the evidence either before the district court through a motion for judgment notwithstanding the verdict or on appeal."); *Hubbard v. White,* 755 F.2d 692, 695 (8th Cir.) (motion for "directed verdict" at the close of evidence was an "essential condition precedent" to a motion for "judgment notwithstanding the verdict," and where no such motion was made at the close of evidence, the j.n.o.v. motion was barred), *cert. denied,* 474 U.S. 834, 106 S.Ct. 107, 88 L.Ed.2d 87 (1985); *Myers v. Norfolk Livestock Mkt., Inc.,* 696 F.2d 555, 558 (8th Cir.1982); *see also Redd v. City of Phenix City, Ala.,* 934 F.2d 1211, 1214 (11th Cir.1991); *Yohannon v. Keene*

---

3. While Rule 50 was amended effective December 1, 1993, the amendment was technical in nature. "[P]rior to 1991 amendments made to the Federal Rules of Civil Procedure, a Rule 50 motion was a motion for directed verdict or motion for judgment notwithstanding the verdict. The 1991 amendments merely changed the names of these motions, but the standard for application of this rule remains the same." *Jackson v. Swift–Eckrich, Inc.,* 836 F.Supp. 1447, 1449 (W.D.Ark.1993), *aff'd,* 53 F.3d 1452 (8th Cir.1995). The Committee Notes to Rule 50 indicate:

This technical amendment corrects an ambiguity in the text of the 1991 revision of the rule, which, as indicated in the Notes, was not intended to change the existing standards under which "directed verdicts" could be granted. This amendment makes clear that judgments as a matter of law in jury trials may be entered against both plaintiffs and defendants and with respect to issues or defenses that may not be wholly dispositive of a claim or defense.

*Fed.R.Civ.P.* 50 advisory committee's note.

*Corp.,* 924 F.2d 1255, 1261 (3d Cir.1991).[4] The motion for judgment as a matter of law at the close of the evidence must assert each of the grounds subsequently relied upon in the post-trial motion for judgment as a matter of law. *Midamar Corp. v. National–Ben Franklin Ins. Co.,* 898 F.2d 1333, 1337 (8th Cir.1990); *Lowe v. Conlee,* 742 F.2d 1140, 1141 (8th Cir.1984); *see also Purcell v. Seguin State Bank & Trust Co.,* 999 F.2d 950, 956 (5th Cir.1993); *McCann v. Texas City Refining, Inc.,* 984 F.2d 667, 671 (5th Cir. 1993). Thus, a party who either fails to move for judgment as a matter of law on any claim at the conclusion of the evidence or fails to renew at that time a motion for judgment as a matter of law made earlier than the close of the evidence has waived a post-trial motion for judgment as a matter of law pursuant to Rule 50(b), and instead must seek relief in a motion for new trial pursuant to *Fed.R.Civ.P.* 59. *Myers,* 696 F.2d at 558; *see also Purcell,* 999 F.2d at 956 (failure to renew motion waives right to file a post-verdict motion for judgment); *McCann,* 984 F.2d at 672 (motion for judgment as a matter of law made earlier than the close of evidence, but not renewed at the close of all evidence, "cannot serve as a predicate for a motion for judgment notwithstanding the verdict."); *Yohannon,* 924 F.2d at 1261 (party foreclosed from pursuing a motion for judgment notwithstanding the verdict for this reason is limited at the time of post-trial motions to a motion for new trial); *Riverview Inv., Inc. v. Ottawa Community Improvement Corp.,* 899 F.2d 474, 477 (6th Cir.) ("party seeking a judgment n.o.v. must, as a prerequisite, move for a directed verdict at the close of all the evidence or renew such motion if made prior to the close of all the evidence."), *cert. denied,* 498 U.S. 855, 111 S.Ct. 151, 112 L.Ed.2d 117 (1990); *Gutzwiller v. Fenik,* 860 F.2d 1317, 1330 (6th Cir.1988) (party who fails to renew prior motion waives the original motion and is precluded from questioning the sufficiency of the evidence on appeal). The Trust made a motion for judgment as a matter of law at the conclusion of the Waiteks' evidence and at the conclusion of its own case. Therefore, the Trust has not waived a post-trial motion for judgment as a matter of law pursuant to Rule 50(b).

### 2. Evidentiary standard

In determining a motion for j.n.o.v. (and in the current parlance of Federal Rule of Civil Procedure 50, a motion for "judgment as a matter of law"), the court in *White v. Pence,* 961 F.2d 776 (8th Cir.1992), observed that

the question is a legal one, whether there is sufficient evidence to support a jury verdict. This court must analyze the evidence in the light most favorable to the prevailing party and must not engage in a weighing or evaluation of the evidence or consider questions of credibility. *See Dace v. ACF Indus., Inc.,* 722 F.2d 374, 375–76 (8th Cir.1983), *supplemented,* 728 F.2d 976 (1984). We have also stated that to sustain a motion for j.n.o.v., all the evidence must point one way and be susceptible of no reasonable inference sustaining the position of the nonmoving party. *Id.* at 375; *Washburn v. Kansas City Life Ins. Co.,* 831 F.2d 1404, 1407 (8th Cir.1987); *Brown [v. Syntex Lab., Inc.],* 755 F.2d [668,] 671 [ (8th Cir.1985) ]. These principles have no application to the consideration of a motion for new trial on the ground that the verdict is against the weight of the evidence.

*Pence,* 961 F.2d at 779 (footnotes omitted); *see also Gardner v. Buerger,* 82 F.3d 248, 251 (8th Cir.1996); *Butler v. French,* 83 F.3d 942, 943 (8th Cir.1996) (citing these standards from *Pence* ); *Simmons Poultry Farms, Inc. v. Dayton Road Dev. Co.,* 82 F.3d 217, 220 (8th Cir.1996) (citing *Pence* ); *Sherlock v. Quality Control Equip. Co.,* 79 F.3d 731, 735 (8th Cir.1996); *Fox v. T–H Continental Ltd. Partnership,* 78 F.3d 409, 413 (8th Cir.1996) (citing *Pence* ); *Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 800 (8th Cir.1994) (citing *Pence* ); *First Dakota Nat'l Bank v. Saint Paul Fire & Marine Ins. Co.,* 2 F.3d 801, 808–09 (8th Cir.1993). Thus, this standard requires the district court to:

---

4. The advisory note to the 1963 amendment to *Fed.R.Civ.P.* 50(b) "unequivocally states a 'motion for a judgment notwithstanding the verdict will not lie unless it was preceded by a motion for directed verdict made at the close of the evidence.' " *Redd,* 934 F.2d at 1214.

"consider the evidence in the light most favorable to the prevailing party, assume that the jury resolved all conflicts of evidence in favor of that party, assume as true all facts which the prevailing party's evidence tended to prove, give the prevailing party the benefit of all favorable inferences which may reasonably be drawn from the facts, and deny the motion, if in light of the foregoing, reasonable jurors could differ as to the conclusion that could be drawn from the evidence."

*Minneapolis Community Dev. Agency v. Lake Calhoun Assoc.*, 928 F.2d 299, 301 (8th Cir.1991) (quoting *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 989 (8th Cir. 1989)); *see also Stephens v. Johnson*, 83 F.3d 198, 200 (8th Cir.1996) (citing *Whitnack v. Douglas County*, 16 F.3d 954, 956 (8th Cir. 1994), in turn, quoting *Hastings v. Boston Mut. Life Ins. Co.*, 975 F.2d 506, 509 (8th Cir.1992)); *Haynes v. Bee-Line Trucking Co.*, 80 F.3d 1235, 1238 (8th Cir.1996); *Nelson*, 26 F.3d at 800 (reiterating these factors, citing *Pence*, 961 F.2d at 779); *McAnally v. Gildersleeve*, 16 F.3d 1493, 1500 (8th Cir. 1994) (same).

This standard for consideration of a motion for judgment as a matter of law accords the jury's verdict substantial deference. *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1315, 131 L.Ed.2d 196 (1995); *McAnally*, 16 F.3d at 1500. However, even with this deference to the jury's verdict, the jury cannot be accorded "the benefit of unreasonable inferences, or those 'at war with the undisputed facts,'" *McAnally*, 16 F.3d at 1500 (quoting *City of Omaha Employees Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 651 (8th Cir.1989), in turn, quoting *Marcoux v. Van Wyk*, 572 F.2d 651, 653 (8th Cir.), *cert. dismissed,* 439 U.S. 801 (1978)); *see also Larson v. Miller*, 76 F.3d 1446, 1452 (8th Cir.1996) (a mere scintilla of evidence is inadequate to support a jury verdict) (quoting *City of Omaha*, 883 F.2d at 651), but the court must still defer to the jury's resolution of conflicting testimony.

*Jackson v. Virginia*, 443 U.S. 307, 326, 99 S.Ct. 2781, 2792–93, 61 L.Ed.2d 560 (1979).

With these principles in mind concerning the standards for resolving post-trial motions under Federal Rule of Civil Procedure 50, the court turns to an examination of the evidence introduced at trial concerning the Waiteks' claims to determine whether post-trial relief from the jury's verdict against the Trust is appropriate.

### B. The Trust's Grounds For Judgment As A Matter Of Law

As indicated in Section I of this opinion, the Trust has raised three issues upon which it argues it is entitled to judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(b).[5] The court will address each of these grounds in the order in which the Trust has presented them in its brief in support of its motion.

### 1. Causation and Dr. Dunker's testimony

The Trust argues that under the standard set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), Dr. R. Bruce Dunker's medical opinion, which was the sole medical evidence on causation and who was the only medical expert who testified on behalf of the Waiteks, was insufficient to create a jury issue with regard to causal connection. The Trust contends the medical evidence of record in the case fails to show that Priscilla Waitek was suffering from pelvic infection while she was wearing the Dalkon Shield or at any other relevant time; therefore, Dr. Dunker's testimony that she had a silent pelvic infection is unsupported by the medical evidence and is insufficient to support the jury's verdict. In addition, the Trust asserts Dr. Dunker's opinion at trial was so contradictory to his prior opinions in both the medical records and his deposition that judgment as a matter of law should be granted on

---

5. At the hearing on the Trust's post-trial motions, the Trust focused its oral argument in support of its motion pursuant to *Fed.R.Civ.P.* 50(b) on the first issue, Dr. Dunker's testimony as the basis for the jury's finding of causation, declining to orally argue the second and third grounds asserted in its brief.

the issue of causation.[6] As further evidence of the lack of support for Dr. Dunker's opinion, the Trust cites the testimony of one of its own experts, Dr. Rudolph Galask, who testified that the use of IUD's, such as the Dalkon Shield, does not result in silent or asymptomatic pelvic infection.

The Waiteks assert the court properly exercised its function as required by the Federal Rules of Evidence and the United States Supreme Court opinion in *Daubert* and pursuant to the standard set forth in *Daubert*, Dr. Dunker was allowed to express his opinions. Furthermore, the Waiteks note the Trust concedes that Dr. Dunker testified at trial that Priscilla Waitek's use of the Dalkon Shield was the cause of her miscarriages in 1979 and her ectopic pregnancies in 1982 and 1984. While the Trust attempted to discredit Dr. Dunker by claiming his testimony at trial was inconsistent with his prior statements and records, the Waiteks maintain that the jury "was the proper body to determine the effect of the challenge to Dr. Dunker's credibility." (Waiteks' Resistance Brief, p. 5). Thus, because the jury found Dr. Dunker's testimony regarding causation to be credible, the Waiteks argue the Trust's motion for judgment as a matter of law should be denied.

Having introduced the parties' arguments regarding this issue, the court reviews the evidence presented at trial and the record as a whole to determine whether judgment as a matter of law on this ground is appropriate.

### a. Waiver

■ In reviewing the Trust's objection to the admissibility of Dr. Dunker's testimony or his opinions, the court notes *the record reveals that the Trust failed to object to the admissibility of Dr. Dunker's testimony, including his testimony about his opinions on causation, on any ground, either prior to or during his testimony.* Federal Rule of Evidence 103(a) provides that

> [e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

> (2) Offer of proof. In case the ruling excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

*Fed.R.Evid.* 103(a). Thus, the failure to object to the admission of evidence at trial allows a court to review the admission only for plain error. *See Fed.R.Evid.* 103(a); *McKeel v. City of Pine Bluff*, 73 F.3d 207, 211 (8th Cir.1996) (when defendant offered medical records into evidence, plaintiff's failure to object limits review of the admission of those records to review for plain error); *Hose v. Chicago Northwestern Transp. Co.*,

---

6. The Trust maintains that Dr. Dunker's opinions at trial were "so contradictory" in light of his notes in the medical records and his testimony at his deposition. Dr. Dunker saw Priscilla Waitek as a patient on four occasions, including during the time period when she was wearing the Dalkon Shield. In Dr. Dunker's records regarding these visits from January of 1975 to November of 1977, he made no notes that Priscilla Waitek was suffering from a pelvic infection during that time. In addition, in 1990, after the Waiteks asked Dr. Dunker to review Priscilla Waitek's records for a cause and effect relationship between her ectopic pregnancies and the use of the Dalkon Shield, Dr. Dunker did not state that Priscilla Waitek's medical problems were caused by the Dalkon Shield to a reasonable degree of medical certainty. Lastly, in Dr. Dunker's deposition, he stated that there was no medical evidence revealing that Priscilla Waitek had a pelvic infection as of November 1977 or at the time of her hystersalpingogram in December 1979, which was almost three years after her Dalkon Shield removal. However, at trial, Dr. Dunker testified that the Dalkon Shield was the cause of Priscilla Waitek's miscarriages in 1979 and her ectopic pregnancies in 1982 and 1984. Dr. Dunker stated that he came to the conclusion that the Dalkon Shield caused a silent or asymptomatic disease in Priscilla Waitek after he read the Waiteks' depositions, which contained their sexual history, and after he read the medical literature. The Trust argues this testimony at trial, despite Dr. Dunker's explanation that he could not form an opinion about the causal connection between Priscilla Waitek's injuries and the Dalkon Shield until he reviewed the Waiteks' sexual history and until he read the relevant medical literature, was contradictory and warrants judgment as a matter of law.

70 F.3d 968, 973 (8th Cir.1995) (citing *Owen v. Patton*, 925 F.2d 1111, 1115 (8th Cir. 1991)); *see also Christopher v. Cutter Labs.*, 53 F.3d 1184, 1192 (11th Cir.1995) (where party contends that doctor's testimony was statistically invalid, but failed to object to the challenged testimony at the time of trial, party has failed to preserve issue for appeal, and the court will review the challenged evidence only for plain error); *Bannister v. Town of Noble, Okla.*, 812 F.2d 1265, 1271 (10th Cir.1987) (if no timely objection or motion to strike is made at the time the evidence is admitted, we will reverse only if there was plain error and a substantial right of the objecting party is affected).

***i. McKnight.*** The Eighth Circuit Court of Appeals has held the failure to object to an expert's testimony at trial on the basis that he or she was not qualified as an expert or that he lacked a scientific basis for his opinions precluded the court's consideration of that issue on appeal absent plain error. *See McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1407 (8th Cir.1994). In *McKnight v. Johnson Controls, Inc.*, the defendant appealed the district court's order denying its motion for judgment as a matter of law or new trial after a jury returned a $1.2 million verdict for the plaintiff in his product liability lawsuit against the defendant. *McKnight*, 36 F.3d at 1399. The defendant argued it was entitled to judgment as a matter of law because the only evidence to support the verdict should not have been admitted by the district court, including the court's admission of testimony and test results of plaintiff's expert without requiring the proper foundation for his qualification as an expert, and the court's admission of speculative testimony from plaintiff's expert about a key issue—the existence of a manufacturing defect. *Id.*

Upon reviewing the transcript of the week-long trial, *see id.*, the court concluded that it need not reach the issue of whether the admission of the plaintiff's expert testimony was proper under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), because the defendant failed to object to the expert's testimony on the basis that he was not qualified as an expert or that he lacked a scientific basis for his opinions. *McKnight*, 36 F.3d at

1407. The court held that "[w]ithout an objection and a proper request for relief, the matter is waived and will receive no consideration on appeal absent plain error." *Id.* (citing *Owen*, 925 F.2d at 1115). While the court recognized that the defendant made an objection to the lack of foundation for the expert's testimony, the court found that the defendant's objection "fail[ed] to raise any question about the *scientific validity* of the principles and methodology underlying his testimony." *Id.* (citing *Daubert*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). In addition, regarding the defendant's argument in his motion for judgment as a matter of law that the court should not have admitted the "speculative testimony" of the expert on a key issue of the case, the court found that the defendant's failure to make a contemporaneous objection precluded the court's consideration of this issue as a ground for judgment as a matter of law. *Id.* The court stated that

> "[t]he rule is well settled in this circuit that for an objection to be timely it must be made at the earliest possible opportunity after the ground of objection becomes apparent, or it will be considered waived." *Terrell v. Poland*, 744 F.2d 637, 638–39 (8th Cir.1984). If the ground for the objection becomes apparent while the witness is testifying, a subsequent motion to strike the testimony after the witness finishes does not preserve the issue for appeal. *Id.* at 639. We find that the grounds asserted for objecting to [the expert's] "speculative testimony" on direct examination were apparent at the time [the expert] provided the testimony and, thus, the motion to strike was not a timely objection, and no error can be predicated on the court's determination of it.

*McKnight*, 36 F.3d at 1408.

***ii. Other jurisdictions.*** The Eighth Circuit's decision in *McKnight* is in accord with decisions of other jurisdictions. In *Marbled Murrelet v. Babbitt*, 83 F.3d 1060 (9th Cir. 1996), the Ninth Circuit held that where a defendant fails to object to the admissibility of scientific evidence at the trial court level or fails to request a ruling to pre-trial *Daubert* objections, the defendant waives the

right to raise the admissibility issue on appeal. *Babbitt*, 83 F.3d at 1066. The defendant in that case raised its *Daubert* objections before trial; however, the district court did not rule on those objections and defendant did not request such a ruling. *Id.* Thus, by failing to request a ruling on the admissibility of the scientific evidence, defendant evaded the court's decision of that issue. *Id.* at 1067. As a result, defendant was precluded from raising its *Daubert* challenges to the admissibility of the evidence. *Id.* The defendant, however, raised his *Daubert* challenge not as a challenge to the admission of the evidence, but in the context of an insufficiency-of-the-evidence argument. *Id.* at 1066. The court noted that in the defendant's view, "whether admitted at trial or not, [the] scientific evidence of impaired breeding of marbled murrelets fails the *Daubert* test because it is irrelevant and unreliable, and therefore is insufficient to support the district court's judgment." *Id.* The court was not persuaded by defendant's reasoning, holding that if the defendant was permitted to challenge on appeal the reliability of the scientific evidence under *Daubert*, "in the guise of an insufficiency-of-the-evidence argument," it would receive an unfair advantage. *Id.* at 1067. The defendant would be "free to gamble on a favorable judgment before the trial court, knowing that [it could] seek reversal on appeal because of its failure to obtain a ruling on [its] objections." *Id.* (citing *Fenton v. Freedman*, 748 F.2d 1358, 1360 (9th Cir.1984)).

In addition, the Eleventh Circuit Court of Appeals addressed the necessity of a timely objection in order to preserve an issue for appeal in *Christopher v. Cutter Labs.*, 53 F.3d 1184, 1192 (11th Cir.1995), where the defendant failed to object at trial to the admissibility of an expert's opinion, raising the issue for the first time in its motion for judgment as a matter of law. *Christopher*, 53 F.3d at 1192. Upon review of the expert's testimony, the court found that although several of his statements were statistically invalid and the district court should not have admitted them, defendant failed to raise a contemporaneous objection to the challenged testimony. *Id.* at 1191–92. Because defendant failed to object to the expert's testimo-

ny, the court reviewed the challenged testimony only for plain error. *Id.* at 1192. In reviewing the expert's entire testimony, along with all of the evidence, the court found the district court did not commit plain error. *Id.* Regarding the defendant's failure to timely object to the expert's testimony, the court stressed the necessity of a contemporaneous objection, stating as follows:

> Entering an objection to evidence is not primarily a matter of building a record for appeal or a tactical maneuver by counsel. Its principal purpose is that counsel bring to the attention of the trial judge evidence that counsel considers inadmissible or prejudicial so that, if there is an error involved, the court has a chance to correct it on the spot. [*Saunders v. Chatham County Bd. of Comm'rs*, 728 F.2d 1367, 1368 (11th Cir.1984) ].

> What occurred in this case provides a classic example of why contemporaneous objections need to be made. Some of [the expert's] testimony could have been read to be inaccurate and inconsistent, but he was afforded no opportunity to clarify the apparent inconsistencies. If [defendant] believed that [the expert's] testimony was statistically invalid, it should have objected to that testimony, giving him the chance to explain his answers. Objecting also would have provided the district court with the opportunity to make a ruling on the accuracy and admissibility of the challenged testimony but also to clarify that testimony.

*Id.* Having discussed the law regarding the necessity of a timely objection, the court turns to the determination of whether the Trust's failure to timely object to the admissibility of or basis of Dr. Dunker's opinions precludes the court's consideration of that issue as a ground for judgment as a matter of law.

***iii. The Trust's failure to timely object.*** The Waiteks' counsel asked Dr. Dunker a series of questions about his opinion on the issue of causation in this case. (Trial Transcript, pp. 641–49.). Counsel asked Dr. Dunker if he had an opinion based upon a reasonable medical certainty as to whether

Priscilla Waitek would have suffered her various injuries if she had never had a Dalkon Shield inserted in her uterus, asking this question repeatedly and referring individually to at least twenty-three different injuries or episodes in which medical care or treatment was administered. Counsel for the Waiteks then proceeded to ask Dr. Dunker to state his opinion and the basis for his opinion. The Waiteks then altered the query to Dr. Dunker, inquiring as to his opinion based upon a reasonable medical certainty about whether Priscilla Waitek would have suffered all of her female medical problems if she had the Dalkon Shield inserted in her uterus in April 1974 and left it in place until January 14, 1977, and had never had the CU-7 IUD inserted at all. Dr. Dunker stated that he had an opinion, and counsel again followed up with an inquiry of the content and basis of his opinion. Counsel for the Waiteks then asked Dr. Dunker if he had an opinion based upon a reasonable medical certainty as to whether the Dalkon Shield was a substantial factor in causing all of Priscilla Waitek's medical problems, referring again to the twenty-three problems mentioned above. Dr. Dunker indicated that he had an opinion and then upon solicitation by counsel, gave his opinion and the basis therefor.

Counsel for the Trust failed to object to the admissibility of Dr. Dunker's opinions at each and every opportunity. Not only did counsel for the Trust fail to contemporaneously object to the admissibility or validity of Dr. Dunker's testimony, the Trust failed to raise any objections to Dr. Dunker's opinions on the causation issue whatsoever, other than objecting to Dr. Dunker's comments regarding Priscilla Waitek's depression, which he made after giving his opinions on causation. Although counsel for the Trust addressed the lack of support for Dr. Dunker's opinion in his motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b), made at the close of plaintiffs' case, the Trust failed to contemporaneously object to the admission of Dr. Dunker's opinions regarding causation in this case. The court concludes the Trust's failure to object "at the earliest opportunity" to the admissibility or validity of Dr. Dunker's opinions on the ground that his medical opinions were not based upon a reasonable medical certainty or unsupported by the evidence of record precludes this court's consideration of this issue as a ground for judgment as a matter of law, absent the existence of plain error.[7] *See Babbitt*, 83 F.3d at 1067; *Christopher*, 53 F.3d at 1192; *McKnight*, 36 F.3d at 1408. As in *Babbitt*,

---

7. At the hearing on its post-trial motions, the Trust repeatedly emphasized the court's "gatekeeping role" concerning the admission of expert testimony envisioned under *Daubert*. However, to trigger the court's role as "gatekeeper," there must be an objection to the admissibility of the expert's testimony. Nothing in *Daubert* obliterates a party's obligation under the Federal Rules of Evidence to make a timely objection to the admission of the expert testimony in question. As the Eighth Circuit Court of Appeals recognized in *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 973 n. 3 (8th Cir.1995),

[c]hallenges to the scientific reliability of expert testimony should ordinarily be addressed prior to trial. *See, e.g., Gier [v. Educational Serv. Unit No. 16]*, 66 F.3d [940, ]942 [ (8th Cir.1995) ] (district court excluded expert testimony following pre-trial evidentiary hearing); *Sorensen v. Shaklee Corp.*, 31 F.3d 638 (8th Cir.1994) (district court granted defendant's motion for summary judgment due to insufficiency of plaintiff's expert scientific evidence).
. . . .
An early evidentiary challenge allows the trial judge to exercise properly the "gatekeeping role" regarding expert testimony envisioned under *Daubert*, [509 U.S. at 597, 113 S.Ct. at 2798–99].

*Hose*, 70 F.3d at 973 n. 3. Therefore, the trial court is not "required to exercise its gatekeeping authority over expert testimony without an objection." *McKnight*, 36 F.3d at 1407.

The Trust could have raised its *Daubert* argument either pre-trial through a motion in limine, motion for summary judgment, or a request for a Rule 104(a) hearing. While the Trust addressed the causation issue in its motion for summary judgment, it did not raise a question about the admissibility of or basis for Dr. Dunker's opinion under either Federal Rule of Evidence 702 or *Daubert*. Rather, the Trust argued that in prior deposition testimony, Dr. Dunker could not say that the Dalkon Shield was the cause of Priscilla Waitek's ectopic pregnancies. (Trust's Brief in Support of its Motion for Summary Judgment, p. 9.). With their brief in resistance to the Trust's motion for summary judgment, however, the Waiteks filed an affidavit of Dr. Dunker, explaining that whereas at the time he gave his deposition he could not state his opinion as to whether Priscilla Waitek's injuries were caused by her use of the Dalkon Shield, upon reviewing the sexual history of the Waiteks, the affidavit of Priscilla Waitek, and the depositions of the Waiteks, along with all the medical records in the case, he could now conclude that the Dalkon Shield was the most probable cause of Priscilla Waitek's inju-

the Trust attempts to raise its objections to the admissibility and basis for Dr. Dunker's opinions "in the guise of an insufficiency-of-the-evidence argument." *See Babbitt,* 83 F.3d at 1067. The court will not give the Trust the unfair advantage of omitting its objections to the admissibility of and basis for Dr. Dunker's opinions at trial, where the district court could timely and adequately assess the admissibility and validity of Dr. Dunker's opinions, only to use its objection to his opinion after the close of plaintiffs' evidence as the sole argument and ground for its motion for judgment as a matter of law on causation, the only issue in the case other than damages. The grounds asserted for objecting to Dr. Dunker's testimony were apparent both prior to trial and at the time he testified; thus, the court finds the Trust's failure to contemporaneously object to his testimony has waived this issue on appeal, *see McKnight,* 36 F.3d at 1408, unless the court committed plain error in admitting the challenged testimony.

**■■■■ iv. Plain error.** Federal Rule of Evidence 103(d) provides that nothing in Rule 103, "Rulings on Evidence," "precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." *Fed. R.Evid.* 103(d). The Eighth Circuit has described its review for "plain error" as a determination of whether an error "has seriously affected the fairness, integrity, or public

reputation of the judicial proceedings." *See Jones Truck Lines, Inc. v. Full Serv. Leasing Corp.,* 83 F.3d 253, 257 (8th Cir.1996) (citing *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.,* 64 F.3d 1202, 1211 (8th Cir.1995) (quotation omitted)); *Yannacopoulos v. General Dynamics Corp.,* 75 F.3d 1298, 1304 (8th Cir.1996) (plain error is error which has a serious effect on the fairness of the proceedings). The Trust does not even address the possibility of plain error concerning the admission of Dr. Dunker's opinions on causation, much less demonstrate the existence of such error.[8] However, in examining the record, the court observes Dr. Dunker explained in detail the basis for his medical opinion on causation in this case, discussing his experience as Priscilla Waitek's doctor and his medical background and knowledge of the Dalkon Shield, and the Trust had ample opportunity to cross-examine Dr. Dunker about his opinions. Therefore, the court finds its admission of his medical opinions on causation, where the Trust failed to contemporaneously object, did not seriously affect the fairness or integrity of the trial and thus did not constitute plain error. *See Jones Truck Lines, Inc.,* 83 F.3d at 257. Finding no plain error, the court concludes the Trust's objection to the admissibility of and basis for Dr. Dunker's opinions is waived.

### b. Sufficiency of the evidence

The Trust contends the issue of the admissibility of Dr. Dunker's opinions is separate

---

ries. The Trust argued in its reply brief that Dr. Dunker's affidavit should not be considered or allowed to create a genuine factual issue, asserting that an affidavit that is in direct contradiction of prior deposition testimony does not raise an issue of material fact. The court found that Dr. Dunker's affidavit fell within the exception stated in *Camfield Tires, Inc. v. Michelin Tire Corp.,* 719 F.2d 1361 (8th Cir.1983) that an affidavit contradicting the prior deposition testimony of the affiant but containing an adequate explanation for the disparity may create a genuine issue of fact. *Waitek v. Dalkon Shield Claimants Trust,* 908 F.Supp. 672, 686 (N.D.Iowa 1995). Thus, the Trust focused its argument on summary judgment on the contradictory nature of Dr. Dunker's opinion and his explanation for the alleged contradiction, not the admissibility of or basis for his opinions pursuant to the standard set forth in *Daubert,* failing to cite *Daubert* altogether.

Furthermore, the Trust could have objected contemporaneously to Dr. Dunker's opinions at

trial. However, it failed at every opportunity to raise its *Daubert* objection to Dr. Dunker's testimony. Now, after the jury has returned its verdict, the Trust looks to the court to invoke a "gatekeeping role" pursuant to *Daubert* to keep out evidence that already passed through the gate without objection, asserting that its failure to timely object does not eliminate the court's obligation to find this evidence is inadmissible or invalid. The Eighth Circuit does not agree with the Trust's assertion, *see McKnight,* 36 F.3d at 1407, and neither do I. Thus, absent the existence of plain error, the Trust is precluded from raising this issue in its post-trial motions. *See id.* at 1407–08.

8. The Trust's failure to assert the existence of plain error on this issue is not surprising, in light of lead counsel's contention at the hearing on post-trial motions that he did not have to object to Dr. Dunker's opinion at the time of trial to preserve the *Daubert* issue on appeal. (Transcript of Hearing on Post–Trial Motions, p. 20.).

and distinct from the issue of whether his testimony was sufficient to create a jury issue with regard to causal connection. Drawing that distinction, the Trust argues that regardless of the admissibility of Dr. Dunker's opinions, his testimony was "fundamentally unsupported" by the medical evidence of record in the case, which failed to show that Priscilla Waitek ever suffered a pelvic infection at any relevant time.

The Trust cites *Sorensen v. Shaklee Corp.,* 31 F.3d 638 (8th Cir.1994), for the proposition that where there is no admissible medical or scientific expert testimony, a plaintiff's case is subject to summary disposition. *Sorensen,* 31 F.3d at 650. In addition, the Trust asserts that in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the United States Supreme Court held that while a scintilla of evidence can satisfy the criteria for admissibility of an expert opinion, "in the event the trial court concludes that the scintilla of evidence presented supporting a position is insufficient to allow a reasonable juror to conclude that the position more likely than not is true, the court remains free to direct a judgment." *Daubert,* 509 U.S. at 596, 113 S.Ct. at 2798.

As discussed above, the court finds the Trust has waived this issue. The Trust's attempt to assert an objection to the admissibility of and basis for Dr. Dunker's opinions, which it failed to make contemporaneously, is the lone contention in its "insufficiency-of-the-evidence" argument for judgment as a matter of law. *See Babbitt,* 83 F.3d at 1067. As such, the court concluded the Trust could not circumvent the well-established rule that a timely objection is required to preserve an issue for appeal. In the alternative, however, the court will analyze whether Dr. Dunker's testimony is "fundamentally unsupported" by the record, warranting the entry of judgment as a matter of law on the issue of causation in favor of the Trust. Thus, in accordance with the standard set forth in *Daubert,* the court must determine whether the evidence presented in support of Dr. Dunker's position was "insufficient to allow a reasonable juror to conclude that [his] posi-

tion more likely than not was true." *Daubert,* 509 U.S. at 596, 113 S.Ct. at 2798.

**i. Standards for expert testimony.** The Federal Rules of Evidence provide for testimony of experts as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*Fed.R.Evid.* 702. The decisions of the Eighth Circuit Court of Appeals and the United States Supreme Court have significantly amplified and clarified the meaning of this rule. The Eighth Circuit Court of Appeals has said that " 'Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony.' " *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.,* 47 F.3d 277, 283 (8th Cir.) (quoting *Fox v. Dannenberg,* 906 F.2d 1253, 1256 (8th Cir.1990)), *cert. denied,* —— U.S. ——, 116 S.Ct. 84, 133 L.Ed.2d 42 (1995). The court observed further that

> we acknowledged in *Fox* that "an individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise." [*Fox,* 906 F.2d at 1256.] We also observed in *Fox* that "[t]he threshold question of whether a witness is competent as an expert is solely for the trial judge, and, as the text of Rule 702 suggests, the central issue is whether the expert's testimony will assist the trier of fact." *Id.* Once the trial court has determined "that a witness is competent to testify as an expert, challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than to its admissibility." *Id.; Williams v. Pro-Tec, Inc.,* 908 F.2d 345, 348 (8th Cir. 1990); *Davis v. American Jet Leasing, Inc.,* 864 F.2d 612, 614–15 (8th Cir.1988);

Nielson v. Armstrong Rubber Co., 570 F.2d 272, 276–77 (8th Cir.1978).

Sylla–Sawdon, 47 F.3d at 283.[9]

The Supreme Court has held that expert testimony must be both competent and such that it will assist the trier of fact in determining a fact in issue. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589, 113 S.Ct. 2786, 2794–95, 125 L.Ed.2d 469 (1993); see also Pioneer Hi–Bred Int'l v. Holden Found. Seeds, Inc., 35 F.3d 1226, 1230 (8th Cir.1994) (same). In Daubert, these two considerations were described as a "reliability" prong and a "relevancy" prong to the test of admissibility of an expert's testimony. Daubert, 509 U.S. at 580, 113 S.Ct. at 2790–91 ("[A]n expert's testimony [must] both rest [ ] on a reliable foundation and [be] relevant to the task at hand."); see also Sorensen, 31 F.3d at 647–48. However, courts have treated both relevance and reliability as going to the ultimate issue under Rule 702, which is whether the testimony will be "helpful" to or "will assist" the jury. Fed.R.Evid. 702; Daubert, 509 U.S. at 590–91, 113 S.Ct. at 2795–96; United States v. Johnson, 28 F.3d 1487, 1496 (8th Cir.1994) (citing Daubert), cert. denied, —— U.S. ——, 115 S.Ct. 768, 130 L.Ed.2d 664 (1995).

■ Thus, courts have considered whether an expert's specialized knowledge will help the jury understand evidence or decide a fact issue. TCBY Systems, Inc., 33 F.3d at 929; United States v. Hughes, 15 F.3d 798, 800 (8th Cir.1994); United States v. Nunn, 940 F.2d 1148, 1149 (8th Cir.), cert. denied, 502 U.S. 991, 112 S.Ct. 609, 116 L.Ed.2d 632 (1991). Therefore, expert testimony may be excluded if the jury is equally able to draw the asserted conclusion. Watkins v. Schriver, 52 F.3d 769, 772 (8th Cir. 1995); United States v. French, 12 F.3d 114, 116 (8th Cir.1993) ("Expert testimony is appropriate when it relates to issues that are beyond the ken of people of ordinary intelligence," but " '[w]here the subject matter is within the knowledge or experience of laymen, expert testimony is superfluous,' " quoting Bartak v. Bell–Galyardt & Wells, Inc.,

629 F.2d 523, 530 (8th Cir.1980)); Williams v. Pro–Tec, Inc., 908 F.2d 345, 348–49 (8th Cir.1990). Expert testimony may also be excluded if it would not relate to any issue in the case, because it is " 'not relevant and, ergo, nonhelpful.' " Sorensen, 31 F.3d at 647–48 (quoting Daubert, 509 U.S. at 591, 113 S.Ct. at 2796, in turn, quoting 3 Weinstein & Berger ¶ 702[02], p. 702–18).

■ The Eighth Circuit Court of Appeals has long been "mindful of Rule 702 and [its] own case law's recognition of practical knowledge and experience as providing an adequate basis for expert testimony." Garnac Grain Co., Inc. v. Blackley, 932 F.2d 1563, 1567 (8th Cir.1991). However, where the witness's practical knowledge does not provide the requisite expertise in the area on which they are asked to offer an expert opinion, the witness's testimony may be excluded. Id. at 1566–67.

■ Finally, Rule 702 "is one of admissibility rather than exclusion." Arcoren v. United States, 929 F.2d 1235, 1239 (8th Cir.), cert. denied, 502 U.S. 913, 112 S.Ct. 312, 116 L.Ed.2d 255 (1991); Fox, 906 F.2d at 1256; Hurst v. United States, 882 F.2d 306, 311 (8th Cir.1989). A district court's ruling on the admissibility or exclusion of expert testimony will be reversed only for abuse of discretion. Watkins, 52 F.3d at 771; TCBY Systems, Inc., 33 F.3d at 929; Hughes, 15 F.3d at 800; Gilliam v. Roche Biomedical Labs., Inc., 989 F.2d 278, 279 (8th Cir.1993); Nunn, 940 F.2d at 1149; United States v. Cortez, 935 F.2d 135, 138 (8th Cir.1991), cert. denied, 502 U.S. 1062, 112 S.Ct. 945, 117 L.Ed.2d 114 (1992).

■ As the Supreme Court noted in Daubert, the touchstone of admissibility under Rule 702 is helpfulness to the trier of fact. Daubert, 509 U.S. at 591–92, 113 S.Ct. at 2795–96. Furthermore, in determining the competence of an expert witness, the trial court must first determine under Fed.

9. Under Fed.R.Evid. 704(a), an expert may give an opinion on an ultimate issue for the jury. TCBY Systems, Inc. v. RSP Co., Inc., 33 F.3d 925, 929 (8th Cir.1994). However, "[o]pinions that are 'phrased in terms of inadequately explored legal criteria' or that 'merely tell the jury what result to reach' are not deemed helpful to the jury, Fed.R.Evid. 704 advisory committee's note, and thus are not admissible under Rule 702." United States v. Whitted, 11 F.3d 782, 785 (8th Cir.1993).

*R.Evid.* 104(a) whether the expert's testimony rests on a reliable foundation. *McKnight v. Johnson Controls, Inc.,* 36 F.3d 1396, 1406 (8th Cir.1994) (citing *Daubert* ). However, "as a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Hose v. Chicago Northwestern Transp. Co.,* 70 F.3d 968, 974 (8th Cir.1995) (quoting *Loudermill v. Dow Chem. Co.,* 863 F.2d 566, 570 (8th Cir.1988)); *McKnight,* 36 F.3d at 1408 (citing *Loudermill,* 863 F.2d at 570); *see also Compton v. Subaru of Am., Inc.,* 82 F.3d 1513, 1518 (10th Cir.1996) (quoting *Jones v. Otis Elevator Co.,* 861 F.2d 655, 663 (11th Cir.1988)) (" 'as long as a logical basis exists for an expert's opinion ... the weaknesses in the underpinnings of the opinion [ ] go to the weight and not the admissibility of the testimony.' "). Only " 'if an expert opinion is so fundamentally unsupported that it can offer no assistance to the jury' " must such testimony be excluded. *Hose,* 70 F.3d at 974 (citing *Loudermill,* 863 F.2d at 570); *McKnight,* 36 F.3d at 1408 (citing *Loudermill,* 863 F.2d at 570); *Hughes,* 15 F.3d at 800 (quoting *Loudermill,* 863 F.2d at 570).

***ii. Applicability of Sorensen.*** As mentioned above, the Trust cites an Eighth Circuit Court of Appeals decision, *Sorensen v. Shaklee Corp.,* 31 F.3d 638 (8th Cir.1994), in support of its argument that Dr. Dunker's opinions are fundamentally unsupported by the evidence in the record. There, the court granted summary judgment finding a lack of credible medical evidence that defendant's alfalfa tablets caused birth defects in plaintiffs' children. *Id.* at 650. The lower court found that plaintiffs' proffered expert testimony did not make a case to establish causation where the three experts' testimony indicated the alfalfa tablets were a "possible cause" of the birth defects in plaintiffs' children and that it would be a "reasonable conclusion" that the tablets are a cause. *Id.* at 645 (quoting the lower court's holding). The district court found the plaintiffs' experts addressed none of the considerations relating to scientific validity under *Daubert. Id.* at 650. Furthermore, the court noted the testimony was not derived from the applica-

tion of any reliable methodology or principle. *Id.* Upon review of the record, the court of appeals concluded the district court properly held the testimony inadmissible, irrespective of the experts' conclusions. *Id.* (finding the experts' reasoning might "pass muster in some cases where the obvious result explains the etiology (for example, where a fractured bone accompanied by bruised outer skin and flesh demonstrate that some type of physical contact caused the injury) such reasoning cannot apply here where several possible causes could have produced one effect.").

Here, however, Dr. Dunker did not testify that Priscilla Waitek's use of the Dalkon Shield was a "possible" cause of her injuries, nor did he state that it would be a "reasonable conclusion" that the Dalkon Shield was a proximate cause of her injuries. *Cf. Sorensen,* 31 F.3d at 645. Dr. Dunker definitively stated that based upon a reasonable medical certainty,

> [i]t is my [best medical] judgment, having dealt with the Dalkon Shield and people who have had the Dalkon Shield placed in them in the past, that all of these events are Dalkon Shield related and related to an inflammatory process that the Dalkon Shield created in the uterus that ascended into the fallopian tubes and caused damage to the endothelial lining, the skin lining of the fallopian tubes, making her prone to these ectopic pregnancies and the required surgeries that they brought about and the damage that happened to her reproductive tract as a result of all those ectopics were all related to the Dalkon Shield and the damage it created within the fallopian tubes.

(Trial Transcript, p. 645.). In addition to his own experience, as further basis for his opinion, Dr. Dunker referred to the textbook written by Dr. Richard Sweet on Infectious Disease and Obstetrics and Gynecology. Dr. Dunker testified that Sweet's textbook and articles repeatedly address the inflammatory infectious process that is caused by intrauterine devices, specifically the Dalkon Shield, how it differs from sexually transmitted diseases that cause damage to the fallopian tubes, and how the Dalkon Shield IUD "stood out as an outliner far beyond all the

other IUD's as a cause of IUD-induced pelvic inflammatory disease" because of its multifilament tail allowing bacteria to be wicked into the uterus. (Trial Transcript, p. 646.). Dr. Dunker also stated that Dr. Sweet's volume is widely used in the medical profession by gynecologists in treating diseases of women and is "one of those gold standards of information about infectious diseases and the female reproductive tract." (Trial Transcript, p. 647). While Dr. Dunker acknowledged that he refers to other textbooks in his practice, Dr. Sweet's textbook was the guideline to which he most often referred. (Trial Transcript, p. 647). Contrary to the experts's testimony in *Sorensen*, Dr. Dunker testified that "the Dalkon Shield undeniably, unquestionably caused Priscilla Waitek's reproductive problems from the time it was put in in 1974 until she finally lost her ability to have children in 1984 and beyond." (Trial Transcript, pp. 648–49).

 *iii. Applicability of McKnight.* Perhaps more analogous to this case than *Sorensen* is the Eighth Circuit's decision in *McKnight v. Johnson Controls, Inc.,* 36 F.3d 1396 (8th Cir.1994). The court has already discussed this decision in analyzing the waiver issue regarding expert testimony. As mentioned above, the court found that the

grounds asserted for objecting to plaintiffs' "speculative" testimony on the key issue in the case "were apparent at the time the expert provided the testimony, and, thus, the motion to strike was not a timely objection, and no error can be predicated on the court's determination of it." *McKnight,* 36 F.3d at 1408. However, the court added, that even if it assumed, *arguendo,* that the defendant had preserved this error for review, it would find the trial court committed no error in admitting the testimony. *Id.* Citing its decision in *Loudermill v. Dow Chem. Co.,* 863 F.2d 566, 570 (8th Cir.1988), the court noted it had previously addressed the argument in *Loudermill* that "expert testimony should not have been admitted because it was based on speculation and conjecture, by noting that the factual basis of an expert's testimony generally goes to the credibility of the testimony, not admissibility, and that the party opposing the testimony can attack the factual basis on cross-examination." *Id.* (citing *Loudermill,* 863 F.2d at 570); see also *Hose,* 70 F.3d at 974. The court further commented that the expert's opinion should be excluded as too speculative only where it is "so fundamentally unsupported that it can offer no assistance to the jury." *Id.* (citing *Loudermill,* 863 F.2d at 570).[10]

10. In its brief and at the hearing on its post-trial motions, the Trust leaps to the conclusion that Dr. Dunker's opinion involves a *Daubert* question, without explaining why Dr. Dunker's testimony should be evaluated pursuant to the *Daubert* standard for the admissibility of scientific evidence. The Trust asserted at the hearing that Dr. Dunker's opinion that Priscilla Waitek had a silent pelvic infection, caused by her use of the Dalkon Shield, is a *Daubert* issue because of the lack of scientific or clinical evidence advocating his position. Although the Trust assumes Dr. Dunker's testimony is controlled by the factors set forth in *Daubert,* the court declines to follow the Trust's lead in assuming that *Daubert* is applicable.

In *Daubert,* the Court set out a new framework for determining the admissibility of expert scientific testimony, in which the trial judge must determine at the outset, pursuant to *Fed.R.Evid.* 104(a) whether the expert is proposing to testify to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. *Daubert,* 509 U.S. at 592, 113 S.Ct. at 2796. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be ap-

plied to the facts in issue. *Id.* at 592–93, 113 S.Ct. at 2796–97. The Court then outlined a nonexhaustive list of factors courts should consider when reviewing a proffer of expert scientific testimony, including whether the theory or technique has been tested, subjected to peer review or publication, is generally accepted within the relevant scientific community, or has a known or potential rate of error. *Id.* at 593–94, 113 S.Ct. at 2796–97. In considering these factors, the Court reminded, "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595, 113 S.Ct. at 2797–98.

As the Tenth Circuit found in *Compton v. Subaru of Am., Inc.,* 82 F.3d 1513, 1518 (10th Cir. 1996), *Daubert* clearly provided that the factors outlined by the Court are applicable only when a proffered expert relies on some principle or methodology. *Compton,* 82 F.3d at 1518–19 (finding the *Daubert* factors have no bearing on expert's testimony, where expert's conclusions were not based on a methodology or technique; rather, expert reached his conclusions by drawing upon general engineering principles and his twenty-two years of experience as an automotive engineer). Application of the *Daubert* factors is unwarranted in cases where expert testimony is

based solely upon experience or training, and in such cases, "Rule 702 merely requires the trial court to make a preliminary finding that proffered expert testimony is both relevant and reliable while taking into account '[t]he inquiry' envisioned by Rule 702 is ... a flexible one.'". *Id.* at 1518–19 (quoting *Daubert*, 509 U.S. at 594, 113 S.Ct. at 2797). The court in *Compton* further noted that "[s]ubsequent to *Daubert*, we have continued to apply essentially the same Rule 702 analysis except in cases involving unique, untested, or controversial methodologies or techniques." *Id.* at 1519 (citing, e.g. *United States v. Muldrow*, 19 F.3d 1332, 1338 (10th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 175, 130 L.Ed.2d 110 (1994), where the court "resorted to the conventional Rule 702 approach, permitting expert testimony by a police officer with specialized knowledge of drug trafficking," but applied the *Daubert* factors to the expert testimony of a forensic chemist to determine the reliability and relevance of his methodology); *see also United States v. Sinclair*, 74 F.3d 753 (7th Cir. 1996) (finding that *Daubert* applies to scientific experts only); *Polizzi Meats, Inc. v. Aetna Life & Cas. Co.*, 931 F.Supp. 328, 336 (D.N.J.1996) (*Daubert* addresses the standards to be applied by a trial judge when faced with a proffer of expert scientific testimony based upon a novel theory or methodology); *Lappe v. American Honda Motor Co.*, 857 F.Supp. 222 (N.D.N.Y.1994), *aff'd sub nom. Lappe v. Honda Motor Co. Ltd. of Japan*, —— F.3d ——, 1996 WL 170209 (2d Cir. Apr. 11, 1996) (finding that *Daubert* applies only to expert evidence approaching the outer limits of traditional science); *United States v. Starzecpyzel*, 880 F.Supp. 1027, 1040 & n. 14 (S.D.N.Y. 1995) (finding *Daubert* only applies to scientific evidence, but that it is not limited to "novel" scientific evidence or unconventional methods); *Dennis v. Pertec Computer Corp.*, 927 F.Supp. 156, 161 (D.N.J.1996) ("Although the Daubert approach embraces novel scientific opinions, those opinions must be "based on the methods and procedures of science rather than on subjective belief or unsupported speculation.") (quoting *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 742 (3d Cir.1994)), *cert. denied*, —— U.S. ——, 115 S.Ct. 1253, 131 L.Ed.2d 134 (1995); *Officer v. Teledyne Republic/Sprague*, 870 F.Supp. 408, 410 (D.Mass.1994) (*Daubert's* principles have valuable application to admissibility of controversial and novel scientific evidence, but "less use in fields like design engineering where 'general acceptance' is the norm, not the exception"). *But see Berry v. City of Detroit*, 25 F.3d 1342, 1350 (6th Cir.1994) (although *Daubert* dealt with scientific experts, the language is explicable to all expert testimony offered under Rule 702), *cert. denied*, —— U.S. ——, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995).

As the Tenth Circuit recognized, *Daubert* does not completely transform the traditional analysis under Rule 702. *Compton*, 82 F.3d at 1519; *see also U.S. v. 14.38 Acres of Land*, 80 F.3d 1074, 1078 (5th Cir.1996) (*Daubert* does not "otherwise work a seachange over federal evidence law;" rather, *Daubert* articulates what the Federal Rules of Evidence, as well as a trial court's traditional role, already required—that the trial court engage in the initial "gatekeeping" task of establishing whether proffered evidence is sufficiently reliable and relevant, and thus presumptively admissible unless excludable on some other "ground."); *United States v. Sinclair*, 74 F.3d 753, 757 (7th Cir.1996) ("*Daubert* does not create a special analysis for answering questions about the admissibility of all expert testimony"). Rather, *Daubert* sets forth additional factors the trial court should consider under Rule 702 if an expert witness offers testimony based upon a particular methodology or technique. *Compton*, 82 F.3d at 1519; *cf. Becker v. National Health Prods, Inc.*, 896 F.Supp. 100, 103 (N.D.N.Y.1995) (where medical expert's opinion was based upon a variety of factors, including medical history, reference to scientific and medical treatises and articles, and their training and experience, opinion was sufficiently reliable under *Daubert;* the fact that the expert's theories were not subject to peer review and publication or general acceptance goes to the weight of their testimony rather than its admissibility) (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir.1995)).

Here, Dr. Dunker's opinions were not based on a novel scientific test or a unique, controversial methodology or technique; rather, he based his opinions on his experience and training as both a gynecologist and as a doctor experienced in the use of and medical problems associated with the Dalkon Shield. He also based his opinions on his experience as Priscilla Waitek's doctor, who treated her during the time she wore the Dalkon Shield, the review of her medical records and the Waiteks' deposition testimony about their sexual history, and a review of medical literature, to which he referred in his practice. Dr. Dunker's testimony did not rely on a unique "methodology" or specific "technique" for which an application of the *Daubert* factors would be helpful in addressing the touchstones of admissibility, the reliability and relevance of proffered expert testimony. *See Compton*, 82 F.3d at 1518.

Regarding his opinion as to whether Priscilla Waitek had a pelvic infection, Dr. Dunker explained why his medical records on Priscilla Waitek did not reveal a pelvic infection, discussing the silent nature of the infection and the difficulty in detecting such an infection, including a discussion of why certain tests, such as a hysterosalpingogram, would not necessarily show the existence of adhesions on the outside of the fallopian tube. (Trial Transcript, pp. 625–26, 667, 681–82, 716.). In addition, he interpreted the notes of his partner, Dr. Hall, regarding Priscilla Waitek, concluding that Dr. Hall treated her with an antibiotic because he was concerned about the symptoms she was experiencing and a possible pelvic infection. (Trial Transcript, pp. 630–31.). Dr. Dunker further noted that the medical records showed adhesions around the right ovary and damage to the fimbria, both of which he opined were created by an inflammatory process or pelvic infection. (Tr. 670–72.). As

*iv. Dr. Dunker's opinions.* Dr. Dunker stated the basis of his opinion was derived from his own experiences as a gynecologist who had treated women who were Dalkon Shield users, experiences of other women throughout the country who had used the Dalkon Shield, and medical literature, including Dr. Sweet's textbook, which was considered to be one of the "gold standards" of the gynecological and obstetrics professions. (Trial Transcript, pp. 645–47.).[11] Dr. Dunker testified that based upon these factors, he concluded that Priscilla Waitek's use of the Dalkon Shield caused her injuries. While it is true the medical records did not indicate that Priscilla Waitek showed any visible signs of a pelvic infection, it was Dr. Dunker's opinion, based upon his experience, the experience of others, and the medical literature he reviewed, that Priscilla Waitek had a silent pelvic infection caused by her use of the Dalkon Shield which resulted in her miscarriages in 1979, her ectopic pregnancies, and her various other injuries. By definition, a silent or asymptomatic infection is unique in that it would not necessarily be supported by visible medical evidence; however, Dr. Dunker opined that the medical literature he reviewed in analyzing the causation aspect of

this case indicated that these types of silent pelvic infections are caused by the Dalkon Shield. Considering the unique nature of Priscilla Waitek's condition and the basis and explanation Dr. Dunker provided for his opinions, his opinion rested on a "reliable foundation" and was "relevant to the task at hand." *Daubert,* 509 U.S. at 580, 113 S.Ct. at 2790–91. Dr. Dunker gave a competent, plausible opinion about whether Priscilla Waitek had a silent pelvic infection and whether her injuries were caused by her use of the Dalkon Shield based upon his experience and his review of records and literature.

In *Daubert,* the Supreme Court addressed concerns raised by the respondent that the abandonment of "general acceptance" as the exclusive requirement for admission would "result in a 'free-for-all' in which befuddled juries are confounded by absurd and irrational pseudoscientific assertions." *Daubert,* 509 U.S. at 595–96, 113 S.Ct. at 2798. Noting the pessimism of counsel about the capabilities of the jury and of the adversary system generally, the Court found that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction of the burden of proof are the traditional and appropriate

for the issue of whether the Dalkon Shield was a proximate cause of Priscilla Waitek's injuries, Dr. Dunker explained that he relied on his experience and knowledge obtained in his practice, which includes his study and review of Dr. Richard Sweet's textbook on Infectious Disease and Obstetrics and Gynecology, to address the differences between IUD-induced pelvic infection and pelvic infection caused by a sexually transmitted disease. (Trial Transcript, p. 646.). Dr. Dunker further explained that the difference between these two types of pelvic infections was the reason why it was necessary to review the Waiteks' sexual history before opining on the issue of causation in this case. Dr. Dunker reached his conclusions by drawing upon his experience as Priscilla Waitek's doctor, his medical background, and "general" medical principles regarding the connection between IUD's and pelvic infection found in a textbook to which he referred in his everyday practice of gynecology. In addition, Dr. Dunker reached his opinion on whether Priscilla Waitek had a pelvic infection by interpreting not only his own medical records on Priscilla Waitek, but those of his partner and the other numerous doctors who treated Priscilla Waitek.

Thus, the court opines that while under *Daubert,* a traditional analysis of the reliability and

relevance of Dr. Dunker's testimony is necessary to determine its admissibility, because Dr. Dunker did not offer testimony based upon a particular methodology or technique, the additional factors outlined in *Daubert* are not applicable. *See Compton,* 82 F.3d at 1519. Regardless, so long as the *Daubert* and Rule 702 standards of "reliability" and "relevance" are satisfied, the level of Dr. Dunker's expertise under the *Daubert* factors pertains only to the weight given to Dr. Dunker's testimony, not the admissibility. *See McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1042 (2d Cir. 1995); *Paoli,* 35 F.3d at 741 (if the witness meets the liberal minimum qualifications for an expert under Rule 702, the level of his expertise goes to credibility and weight, not admissibility).

11. On cross-examination, Dr. Dunker also indicated that upon listening to medical tapes taken from his library, he became aware of new criteria for salpingitis, which were added to include the possibility of a silent case of salpingitis. Dr. Dunker stated that this medical tape revealed that doctors are finding hundreds, even thousands of cases of salpingitis in women every year that are silent and happened in the past, though such infection went undetected at the time and was not diagnosed until treating women who suffered ectopic pregnancies. (Trial Transcript, p. 807.).

means of attacking shaky but admissible evidence." *Id.* (citing *Rock v. Arkansas,* 483 U.S. 44, 61, 107 S.Ct. 2704, 2714, 97 L.Ed.2d 37 (1987)); *see also Hose,* 70 F.3d at 975 (in finding the district court committed no abuse of discretion in overruling objection to expert's testimony, the court noted that the defendant had a thorough opportunity to cross-examine the expert about physical symptoms observed in the patient). The court added that "[t]hese conventional devices, rather than wholesale exclusion under an uncompromising "general acceptance" test, are the appropriate safeguards where the basis of scientific testimony meets the standards of Rule 702." *Daubert,* 509 U.S. at 596, 113 S.Ct. at 2798.

The Trust argues that the inconsistencies between Dr. Dunker's testimony at trial and his medical records, his letter to the Waiteks in 1990, and his deposition testimony as evidence that his opinion should be discredited. However, the Trust questioned Dr. Dunker about these alleged inconsistencies, and Dr. Dunker explained that he could not formulate an opinion based upon a reasonable medical certainty in his letter to the Waiteks or at the time of his deposition on the causation issue until he received additional information. Specifically, Dr. Dunker testified that at the time of his deposition, he had not yet seen or reviewed the sexual history of either Priscilla or Marc Waitek, and he had not had the opportunity to review even a good portion of the medical literature regarding this issue. (Trial Transcript, p. 810.). In addition, he did not have all the medical records on Priscilla Waitek at the time of his deposition. (Trial Transcript, p. 810.). Thus, without this information, Dr. Dunker could not give his opinion based upon a reasonable medical certainty on the issue of causation at the time of his deposition. However, after reviewing all the medical records of Priscilla Waitek, the sexual history of the Waiteks, and the

pertinent medical literature between the time of his deposition and the time of trial, Dr. Dunker was able to give his medical opinion based upon a reasonable medical certainty that Priscilla Waitek's use of the Dalkon Shield caused her injuries.[12]

It is the jury's province to weigh the credibility of witnesses and the evidence presented at trial, *see Pence,* 961 F.2d at 779 (citing *Dace,* 722 F.2d at 375–76), and the factual basis of an expert's testimony generally goes to the credibility of the testimony, not admissibility, and that the party opposing the testimony can attack the factual basis on cross-examination. *McKnight,* 36 F.3d at 1408 (citing *Loudermill,* 863 F.2d at 570); *see also Hose,* 70 F.3d at 976 ("Although it is common that medical experts often disagree on diagnosis and causation, questions of conflicting evidence must be left for the jury's determination."). The Trust received ample opportunity to cross-examine Dr. Dunker as to the factual basis of his opinions, along with any alleged inconsistencies in his testimony; apparently, the jury found that Dr. Dunker's testimony at trial and his opinions therein were credible. Upon review of Dr. Dunker's opinions and the basis offered for those opinions and the evidence in the record regarding the causation issue, the court finds that Dr. Dunker's opinion was not so "fundamentally unsupported" by the evidence of record that it was speculative or that it did not offer assistance to the jury. *See Hose,* 70 F.3d at 974; *McKnight,* 36 F.3d at 1408. Thus, viewing the evidence in a light most favorable to the prevailing party, *see Pence,* 961 F.2d at 779, the court finds that there is sufficient evidence to support both Dr. Dunker's opinion on causation and the jury's finding that Priscilla Waitek's use of the Dalkon Shield was a proximate cause of her injuries, and the court denies the Trust's motion for judgment as a matter of law on this ground.

12. Furthermore, when asked on re-direct examination about his testimony on cross-examination that there was a lack of medical evidence showing that Priscilla Waitek had salpingitis, Dr. Dunker clarified his testimony. When counsel for the Trust spoke of the lack of "medical evidence" indicating a pelvic infection, Dr. Dunker testified that he understood "medical evidence" to be a euphemism for "laboratory findings," or anything in the way of a laboratory finding or test that would be proof positive of the presence of salpingitis, of which there was none in Priscilla Waitek's records. However, Dr. Dunker said the absence of laboratory findings showing salpingitis was explained by the medical literature indicating that there are no laboratory tests that doctors can perform to prove positively the presence of salpingitis. (Trial Transcript, p. 815.).

### 2. Adoption expenses

The Trust argues that public policy in Iowa does not permit the recovery of adoption expenses. As sole support for its argument, the Trust cites the Iowa Supreme Court's decision in *Nanke v. Napier*, 346 N.W.2d 520 (Iowa 1984). In *Nanke*, the court held that the parents of a normal, healthy child could not recover child-rearing expenses from a physician whose alleged negligence permitted the birth of the child. *Nanke*, 346 N.W.2d at 522–23. The court based its conclusion on Iowa public policy, "which dictates that a parent cannot be said to have been damaged or injured by the birth or rearing of a normal, healthy child because the invaluable benefits of parenthood outweigh the mere monetary burdens as a matter of law." *Id.* Based upon this rationale, the Trust asserts that the expenses which lead to adoption and parenthood must be outweighed "as a matter of law" by the benefits of parenthood which result from adoption. (Trust's Brief, p. 19.).

■ While the court recognizes the Iowa Supreme Court's holding in *Nanke*, the court also notes that in that decision, the court stated that its ruling was limited to the unique facts of the case and the narrow issue presented. *Nanke*, 346 N.W.2d at 523. Furthermore, examining the unique facts of this case, the court finds that the jury's award of adoption expenses was not an award of expenses associated with child-rearing, but rather was an award of the out-of-pocket expense the Waiteks incurred in adopting their two children. Whereas an award of child-rearing expenses may or may not be against public policy, depending upon the unique circumstances presented in a particular case, *see id.*, the out-of-pocket expenses of adopting two children are reasonably foreseeable expenses for a couple who cannot bear children. Where the use of the Dalkon Shield is a proximate cause of a woman's inability to have children, it is both reasonable and foreseeable that the woman would incur the expense of adopting children as a result of her infertility. Because the jury

found that the use of the Dalkon Shield caused Priscilla Waitek's inability to have children, the award of damages for the out-of-pocket expenses of the Waiteks' two adoptions is proper and does not violate Iowa public policy. Thus, the court denies the Trust's motion for judgment as a matter of law on this ground.

### 3. Past hospital and medical expenses

Finally, the Trust asserts it is entitled to judgment as a matter of law on the Waiteks' claim for past hospital and medical expenses. Citing Iowa Code § 668.14, the Trust contends that the Waiteks cannot recover past hospital and medical expenses which have been covered by insurance. The Trust maintains that Iowa Code § 668.14, which permits evidence and argument as to the payment by a collateral source of actual economic losses incurred for medical care, is applicable to the Waiteks' claims. This provision of the Iowa Code had an effective date of July 1, 1987, and, by the terms of enacting legislation, is applicable to "all causes of action accruing on or after July 1, 1987" as well as to "all causes of action accruing before July 1, 1987, and filed on or after September 15, 1987." 1987 Acts. §§ 9 and 11(1)–(2). Because the Trust contends that the operative date is not the date of the Waiteks' original filing against Robins in 1985, but rather is the date of the Waiteks' filing against the Trust in 1994,[13] the Trust argues that § 668.14 applies to this case.

■ For the reasons stated in its Order Regarding Applicability of Iowa Code § 668.14, dated May 21, 1996, the court finds that Iowa Code § 668.14 is not applicable to the Waiteks' case against the Trust. In that order, the court found that

[s]uit was instituted against A.H. Robins at a time when Iowa Code § 668.14 was not applicable. "Commencement" of the suit against the Trust in A.H. Robins' stead was not comparable to the *filing* of a new lawsuit, for the purposes of applicability of Iowa Code § 668.14, but the *substitution*

---

**13.** The Trust cites June 9, 1994, the date the Waiteks' claim was certified, as the commence-

ment date of their action against the Trust.

of one defendant for another by operation of law, with the substituted party subject by imputation from the substitution to the law applicable to the original party at the time of the original filing of the lawsuit.

(Order Regarding Applicability of § 668.14, p. 5.). The court concluded the Iowa common-law collateral source rule, which provided that "recovery from a tortfeasor" is not affected by payments of collateral benefits, was the rule applicable to evidence of collateral benefits in the Waiteks' case against the Trust. *See Rudolph v. Iowa Methodist Medical Ctr.*, 293 N.W.2d 550, 558 (Iowa 1980). Because the Trust has not raised any argument or issue in its motion for judgment as a matter of law that it had not already asserted at the time of the court's prior order, for the reasons stated in that order, the court denies the Trust's motion for judgment as a matter of law on the Waiteks' claims for past hospital and medical expenses.

### III. THE TRUST'S MOTION FOR NEW TRIAL

The Trust has made a motion for new trial pursuant to *Fed.R.Civ.P.* 59(a). Before proceeding to the disposition of this motion, the court will first examine the standards for disposition of a motion made pursuant to *Fed.R.Civ.P.* 59(a).

#### A. Applicable Standards

■■■■ Federal Rule of Civil Procedure 59, entitled "New Trials; Amendment of Judgments," states in relevant part:

(a) GROUNDS. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States....

*Fed.R.Civ.P.* 59(a). Regarding motions for new trial under Federal Rule of Civil Proce-

dure 59, the court in *White v. Pence*, 961 F.2d 776 (8th Cir.1992) observed:

> With respect to motions for new trial on the question of whether the verdict is against the weight of the evidence, we have stated: "In determining whether a verdict is against the weight of the evidence, the trial court can rely on its own reading of the evidence—it can 'weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain a verdict.'" *Ryan v. McDonough Power Equip.*, 734 F.2d 385, 387 (8th Cir. 1984) (citation omitted). Similar language appears in *Brown*, 755 F.2d at 671–73; *Slatton [v. Martin K. Eby Constr. Co.]*, 506 F.2d [505,] 508 n. 4 [ (8th Cir.1974), *cert. denied*, 421 U.S. 931, 95 S.Ct. 1657, 44 L.Ed.2d 88 (1975) ]; *Bates [v. Hensley]*, 414 F.2d [1006,] 1011 [ (8th Cir.1969) ], and early authority cited in *Bates. See also Leichihman v. Pickwick Int'l*, 814 F.2d 1263, 1266 (8th Cir.), *cert. denied*, 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 116 (1987). These cases establish the fundamental procedures or methodology to be applied by the district court in considering new trial motions and are in contrast to those procedures governing motions for j.n.o.v.

*Id.* at 780. Thus, the court in *Pence* concluded the district court may grant a new trial on the basis that the verdict is against the weight of the evidence, if the first trial results in a miscarriage of justice. *Id.; see also Shaffer v. Wilkes*, 65 F.3d 115, 117 (8th Cir.1995) (citing *Pence* for this standard); *Nelson*, 26 F.3d at 800 ("[A] motion for a new trial should be granted if, after weighing the evidence, a district court concludes that the jury's verdict amounts to a miscarriage of justice."); *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1266 (8th Cir.) (correct standard for new trial is conclusion that "the [jury's] verdict was against the 'great weight' of the evidence, so that granting a new trial would prevent a miscarriage of justice."), *cert. denied*, —— U.S. ——, 115 S.Ct. 487, 130 L.Ed.2d 399 (1994).[14]

---

**14.** Rule 59(a) specifically provides for the grant of a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States," *Fed.R.Civ.P.* 59(a), and the court does not mean to suggest that a verdict against the great weight

of the evidence is the only ground for a new trial in a civil action. *See, e.g., Silbergleit v. First Interstate Bank of Fargo, N.A.*, 37 F.3d 394, 397 (8th Cir.1994) (new trial may be granted on the basis of a question by counsel that places prejudicial information before the jury, citing *Sanders–*

## B. The Trust's Grounds For New Trial

As indicated in Section I of this opinion, the Trust has raised three issues upon which it argues it is entitled to a new trial pursuant to *Fed.R.Civ.P.* 59(a). As grounds for its motion for new trial, the Trust asserts that (1) the testimony of plaintiff's expert, Dr. R. Bruce Dunker, was unsupported and contradictory, and the great weight of the evidence suggests that his conclusions cannot be made to a reasonable medical certainty; (2) the court erred in instructing the jury on proximate cause; and (3) the court erred in denying the Trust's motion for mistrial. The court will address each of these grounds in its disposition of the Trust's motion.[15]

### 1. Causation and Dr. Dunker's testimony

■ In its motion for new trial, the Trust asserts the same arguments it raised in support of its motion for judgment as a matter of law; therefore, the court need not repeat them here. For the reasons stated in Section II(A)(2)(a)(I), the court finds the Trust's failure to raise a contemporaneous objection to the admissibility of or basis for Dr. Dunker's opinions precludes this court's consideration of this issue as a ground for new trial absent the existence of plain error. *See McKnight*, 36 F.3d at 1408. Finding the admission of Dr. Dunker's opinions regarding the issue of causation did not constitute plain error, the court finds the Trust's objection to the admissibility of or basis for Dr. Dunker's opinions is waived.

■ Even if this issue had not been waived by the Trust, the court will examine the evidence to determine if the jury's finding that Priscilla Waitek's use of the Dalkon Shield was a proximate cause of her injuries was against the great weight of the evidence. The Eighth Circuit in *Pence* concluded the district court may grant a new trial on the basis that the verdict is against the weight of the evidence, if the first trial results in a miscarriage of justice. *Pence*, 961 F.2d at 780; *see also Shaffer*, 65 F.3d at 117 (citing *Pence* for this standard). The evidence regarding Priscilla Waitek's injuries and the determination as to whether she had a pelvic infection because of her use of the Dalkon Shield was essentially presented in a classic battle of the experts. Both parties introduced evidence to support their respective theories on whether Priscilla Waitek had a silent pelvic infection caused by her use of the Dalkon Shield. Similarly, both parties attempted to impeach the other's expert and the evidence presented. While the Trust's expert, Dr. Galask, is a well-recognized expert in infectious diseases and testified that IUD's do not cause silent or asymptomatic pelvic infection, the Waiteks' expert, Dr. Dunker, testified that based upon his experience in the field of gynecology, his experience with patients who had used the Dalkon Shield IUD, his review of the Waiteks' sexual history, and a review of the medical literature, which included a textbook by Dr. Sweet, considered to be one of the "gold standards" of the profession, IUD's can cause silent pelvic infections. Given the unusual circumstances of this case in which a silent infection is the medical problem at issue, Dr. Dunker's explanations and opinions based upon his examination of the medical records, his experience with the Dalkon Shield, and his knowledge and review of medical literature on the subject were plausi-

*El v. Wencewicz*, 987 F.2d 483, 484 (8th Cir. 1993), and *McBryde v. Carey Lumber Co.*, 819 F.2d 185, 188 (8th Cir.1987)); *Norton v. Caremark, Inc.*, 20 F.3d 330, 338 (8th Cir.1994) (noting that *Fed.R.Civ.P.* 61 specifically prohibits the grant of a new trial based on errors in admission of evidence, "unless refusal to take such action appears to the court inconsistent with substantial justice."); *Fink v. Foley–Belsaw Co.*, 983 F.2d 111, 114 (8th Cir.1993) (improper jury instruction or failure to comply with Rule 51 may be ground for new trial, but only if moving party can show material prejudice); *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 385 (8th Cir.1992) (misconduct of counsel may be grounds for new

trial, but the court must judge whether there has been an effect on the substantive rights of the parties, or whether the misconduct created undue prejudice or passion tainting the proceedings, particularly in light of whether the district court concludes that an effective curative instruction has been given).

**15.** At the hearing on the Trust's post-trial motions, the Trust focused its oral argument in support of its motion pursuant to *Fed.R.Civ.P.* 59(a) on the first issue, declining to orally argue the second and third grounds asserted in its brief.

ble. Thus, in this case, there was credible evidence produced by the expert witnesses on each side. Had I been the trier of fact in this case, I might have been persuaded by Dr. Galask's expert testimony. However, it is the jury's province to choose between plausible versions of the evidence, *see Jacobs Mfg. Co.*, 19 F.3d at 1267 (citing *Pence*, 961 F.2d at 781); therefore, they were free to reach the opposite conclusion, finding Dr. Dunker's explanations and expert testimony to be more persuasive.

As the Eighth Circuit noted in *Jacobs Mfg. Co. v. Sam Brown Co.*, 19 F.3d 1259, 1267 (8th Cir.1994), "[the court in] *Pence* makes clear that when ... reasonable persons can differ in evaluating credible evidence and the district court has not diminished the credible evidence by finding witnesses unworthy of belief or otherwise properly rejecting some of the testimony, a new trial on the ground of weight of the evidence should not be granted." *Jacobs Mfg. Co.*, 19 F.3d at 1267 (citing *Pence*, 961 F.2d at 781). Here, reasonable persons could differ in evaluating the credible evidence presented by the experts in this case; therefore, the court finds the jury's verdict on the issue of causation is not against the great weight of the evidence. *See Pence*, 961 F.2d at 780. Thus, the Trust's motion for new trial on this ground is denied.

**2. Jury instruction on proximate cause**

As its second ground for a new trial pursuant to *Fed.R.Civ.P.* 59(a), the Trust asserts the court improperly instructed the jury on the issue of proximate cause. The Trust contends the court's inclusion of the sentence, "[t]here can be more than one proximate cause of an injury or damage," was a misstatement of the law and, as such, was prejudicial to the Trust. The source of this optional sentence is the first Note in the

Comments to Iowa Civil Jury Instruction No. 700.3 ("ICJ No. 700.3"), which states:

> In a case where the evidence may show more than one cause contributed to the injury or damages, or sole proximate cause is an issue, the following sentence should be added: "There can be more than one proximate cause of an injury or damage."

ICJ No. 700.3. The Trust argues that neither party presented evidence at trial indicating that more than one cause contributed to the Waiteks' injuries or damages. Furthermore, the Trust notes that sole proximate cause was not an issue in the case. Thus, the Trust maintains that this sentence should not have been added to the jury instruction on proximate cause, and its inclusion in Final Jury Instruction No. 18 constituted a misstatement of the law.[16]

**a. Applicable law**

While the Trust discusses three Iowa cases which are also mentioned as "Authority" in support of ICJ No. 700.3, *see* ICJ No. 700.3 and Trust's Brief, pp. 29–31 (both citing *Benn v. Thomas*, 512 N.W.2d 537, 538–40 (Iowa 1994); *Walker v. Mlakar*, 489 N.W.2d 401 (Iowa 1992); and *Jones v. City of Des Moines*, 355 N.W.2d 49 (Iowa 1984)), none of these three cases discuss the optional last sentence to the proximate cause instruction at issue in this case. The only Iowa case cited by either party which addresses the use of this optional last sentence is the Iowa Supreme Court's decision in *Welte v. Bello*, 482 N.W.2d 437 (Iowa 1992). In *Welte*, the plaintiffs, a patient and her husband, brought medical malpractice actions against an anesthesiologist and a hospital, alleging negligence in the administration of the anesthetic and failure to secure an informed consent of the patient. *Welte*, 482 N.W.2d at 438. Plaintiffs also urged the doctrine of *res ipsa loquitur* supported submission of their general negligence claim. *Id.* Prior to trial, the district court granted partial summary judg-

---

**16.** In the jury instruction on proximate cause in this case, Final Jury Instruction No. 18, the court instructed the jury as follows:

> In order to recover on any claim against the Trust, the Waiteks must prove by the preponderance of the evidence that use of the Dalkon Shield was a proximate cause of their injuries. The use of a product is a "proximate cause" of

injury when it is a substantial factor in producing damage and when the damage would not have happened except for the use of the product. "Substantial" means the use of the product has such an effect in producing damage as to lead a reasonable person to regard it as a cause. There can be more than one proximate cause of an injury or damage.

ment to the anesthesiologist upon the general negligence claim, preserving only the claim for failure to obtain informed consent. *Id.* at 439. The court, however, denied the hospital's motion for summary judgment, finding sufficient evidence to generate a fact issue on whether the hospital nurses were negligent in the administration of the patient's anesthesia. *Id.* At trial, the jury found in favor of the hospital on all claims. *Id.* Regarding the claim against the anesthesiologist, the jury found that he was negligent in failing to inform the patient of the potential for burns from sodium pentothal; however, his negligence was not a proximate cause of plaintiff's injuries. *Id.* On appeal of both the district court's order granting partial summary judgment and the jury verdicts in favor of both the anesthesiologist and the hospital, the Iowa Supreme Court concluded that the district court erred in granting partial summary judgment on the general negligence claim of the anesthesiologist and that the general negligence claim against the hospital must be retried as well. *Id.* at 442.

As a ground for appeal, plaintiffs contended, *inter alia,* that the trial court failed to instruct the jury on "concurrent negligence." *Welte,* 482 N.W.2d at 442. Because the court believed that this issue might reoccur on retrial, it addressed this argument, stating as follows:

> Where the evidence shows more than one cause contributing to injury or damage, the following sentence should be added to the instruction on proximate cause: "There can be more than one proximate cause of an injury or damage."

*Id.* (citing comment to Iowa Civil Jury Instruction No. 700.3). The court opined that "it would be appropriate to submit such an instruction where the claim alleges more than one party was negligent." *Id.*

While the court in *Welte* indicated that it would be appropriate to submit the optional last sentence of ICJ No. 700.3, the court did not preclude the submission of this sentence where a plaintiff has not alleged that more than one device or product caused her damage, nor did they hold that a submission of that sentence under such circumstances would be a "material misstatement of the law." *See Welte,* 482 N.W.2d at 442; *cf. Foggia v. Des Moines Bowl-O-Mat, Inc.,* 543 N.W.2d 889, 892–93 (Iowa 1996) (while the court did not address the issue of whether the optional last sentence of ICJ No. 700.3 is appropriate where concurrent proximate cause is not an issue, the court found that a concurrent proximate cause instruction based on language in a similar instruction in *Spaur v. Owens–Corning Fiberglas Corp.,* 510 N.W.2d 854 (Iowa 1994), was inappropriate where the issue for the jury was the comparative fault of the plaintiff, as opposed to the individual fault of multiple defendants).[17] The first Note in the Comments to ICJ No. 700.3 merely states that where the evidence shows more than one cause contributing to injury or damage, the following sentence should be added to the jury instruction on proximate cause. The suggestion of the inclusion of this sentence in the two situations mentioned in the Comments should not necessarily be construed as a demand of the converse. In other words, the Comments to ICJ No. 700.3 do not preclude the inclusion of this statement in situations where the evidence does not show more than one cause contributed to the injury or damages or where sole proximate cause is not an issue, and the Trust has failed to cite an Iowa case in support of its proposition that the inclu-

---

**17.** In *Foggia,* the court noted that the concurrent proximate cause instruction at issue in *Spaur* read as follows:

It applies whenever two or more parties' separate fault combine, so that, when viewed as a whole, the fault proximately caused plaintiff's injuries. In such cases, the separate fault of each of those parties may be a proximate cause even though individually the party's separate fault would not have alone produced plaintiff's injuries, if the party's separate fault substantially contributed to plaintiff's injuries.

*Foggia,* 543 N.W.2d at 893 (quoting *Spaur,* 510 N.W.2d at 861). In his proposed concurrent proximate cause instruction, Foggia made one important change, suggesting that the instruction substitute the language "two or more separate *conditions*" for the language in the instruction in *Spaur* referring to "two or more parties' separate fault." *Id.* The court found that Foggia's proposed instruction had no applicability to the case at bar. *Id.*

sion would be either inappropriate or a material misstatement of the law.

### b. Review of Final Jury Instruction No. 18

█ Furthermore, while the Waiteks did not allege in their complaint that the CU–7 IUD was a cause contributing to Priscilla Waitek's injury and while the Trust asserts it "did not claim that Priscilla Waitek had an infection caused by the CU–7 IUD or a sexually transmitted infection," *see* Trust's Brief, p. 29, the record contains many references to Priscilla Waitek's use of the CU–7 IUD, subsequent to her use of the Dalkon Shield. In particular, the Trust introduced evidence regarding Priscilla Waitek's use of the CU–7 IUD during the direct examination of one of its experts, Dr. Herbert Sandmire. To highlight Priscilla Waitek's medical history, the Trust used a visual display throughout its direct examination of Dr. Sandmire. The display consisted of a large velcro board, and counsel for the Trust attached velcro cards, one by one, to the board describing events in Mrs. Waitek's medical history as Dr. Sandmire gave his testimony regarding each event. The information provided on the cards included the documentation of events in the record during the time Priscilla Waitek wore the CU–7, including problems she experienced while wearing the CU–7 IUD. Thus, despite the Trust's assertion that it did not "claim" that the CU–7 IUD caused Priscilla Waitek's injuries, it certainly introduced evidence about her use of the CU–7 IUD after her use of the Dalkon Shield and about the pain she suffered while wearing the CU–7 IUD. Given Dr. Sandmire's testimony and the visual emphasis the Trust placed upon Priscilla Waitek's use of the CU–7 IUD as part of her medical history, the court finds it was appropriate under these circumstances to instruct the jury fully on the issue of proximate cause, including the optional sentence, "[t]here may be more than one proximate cause of an injury or damage."

Irrespective of the evidence presented at trial about the CU–7 IUD, the Trust asserted in its Objections to Plaintiffs' Requested Instructions, filed May 28, 1996, that the first two sentences of Final Jury Instruction No.

18 suggest precisely the concept behind the optional last sentence of ICJ No. 700.3—that there can be more than one proximate cause of an injury or damage. In addition, counsel for both parties filed an Agreement on Waiver of Proof and Stipulation, in which they agreed that one of two issues upon which the Waiteks would be required to present proof and which would be submitted to the jury for resolution was:

> a. Have plaintiffs proven, by a preponderance of the evidence, that Mrs. Waitek's use of the Dalkon Shield was *a* proximate cause of her alleged injuries?

Parties' Agreement on Waiver of Proof and Stipulation (emphasis added). Certainly the parties' stipulated use of the article "a" to modify "proximate cause," as opposed to the use of the article "the," implies that there can be more than one proximate cause of an injury or damage.

█ In reviewing the propriety of jury instructions, they are considered as a whole to insure that they fairly and adequately state the substantive law on the issue raised. *Anheuser–Busch, Inc. v. John Labatt Ltd.,* 89 F.3d 1339, 1345 (8th Cir.1996) (district court did not abuse its discretion when instructing the jury because the instructions, when taken as a whole, fairly and adequately presented the issue in the case to the jury); *McKay v. WilTel Communication Sys.,* 87 F.3d 970, 975–76 (8th Cir.1996); *Slathar v. Sather Trucking Corp.,* 78 F.3d 415, 418 (8th Cir.1996). Also, the form and language of jury instructions are within the "sound discretion of the district court so long as the jury is correctly instructed on the substantive issues in the case." *Slathar,* 78 F.3d at 418 (quoting *Walker v. AT & T Technologies,* 995 F.2d 846, 849 (8th Cir. 1993), in turn, quoting *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 731 (8th Cir.), *cert. denied,* 506 U.S. 1014, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992)).

Reviewing the jury instructions as a whole, the court finds it did not err in submitting the optional last sentence of ICJ No. 700.3 as its last sentence in Final Jury Instruction No. 18. The inclusion of that sentence did not draw undue attention to that point; rather, the instruction fairly and adequately stat-

ed the substantive law on the issue of proximate cause. *See Anheuser–Busch, Inc.*, 89 F.3d at 1344–45; *McKay*, 87 F.3d at 976. Thus, the court finds the Trust's assertion that the court materially misstated the law in including the sentence, "[t]here may be more than one proximate cause of an injury or damage," in its final jury instruction on proximate cause to be without merit.

█ In the alternative, even if the court's inclusion of the optional last sentence to Iowa Uniform Jury Instruction 700.3 was improper, an improper jury instruction may be a ground for new trial, but only if the moving party can show material prejudice. *Neely v. American Family Mut. Ins. Co.*, 930 F.Supp. 360, 377 n. 20 (N.D.Iowa 1996) (citing *Fink v. Foley–Belsaw Co.*, 983 F.2d 111, 114 (8th Cir.1993)). The Trust has failed to indicate in any way how it was "materially prejudiced" by the inclusion of this sentence in the court's Final Jury Instruction No. 18. Thus, the Trust's motion for new trial is denied on this ground.

### 3. Court's denial of the Trust's motion for mistrial

As its final ground for new trial, the Trust argues the court erred in denying the Trust's motion for mistrial after Dr. Dunker violated the court's order regarding the Trust's motion in limine by mentioning in his testimony on direct examination a near-death experience of one of his patients who used the Dalkon Shield. On May 21, 1996, the court granted the Trust's motion in limine to exclude evidence concerning other injuries alleged to have been caused by the Dalkon Shield but unrelated to Priscilla Waitek's injuries, as well as evidence concerning the voluntary withdrawal of the Dalkon Shield from the market in June of 1974.

Shortly after the commencement of Dr. Dunker's testimony on direct examination, in discussing his credentials and experience, Dr. Dunker mentioned that he had some bad experiences with the Dalkon Shield in the early 1970s. In response to these experiences, he stated that he wrote a letter of concern to Robins, the manufacturer of the Dalkon Shield, and mandated "cessation of use of the Dalkon Shield in [his] department." (Trial Transcript, p. 600.). Dr. Dunker further testified that thereafter his department terminated its use of the Dalkon Shield and that his reason for writing the letter to Robins was that he was "very concerned because we almost had a death in a woman." (Trial Transcript, p. 600.). At that point in the examination of Dr. Dunker, counsel for the Trust requested a conference with the court outside the presence of the jury, and the jury was temporarily excused from the courtroom. Counsel for the Trust objected to Dr. Dunker's comments, contending the comments violated the court's order regarding the Trust's motion in limine. The court found that Dr. Dunker did, in fact, violate the court's order regarding the Trust's motion in limine and then proceeded to discuss with counsel for both parties what action, if any, should be taken in light of Dr. Dunker's violation of the court's order. Counsel for the Trust moved for a mistrial on the ground that Dr. Dunker's statements were "a clear violation of an understanding that [counsel] had prior to the start of this case." (Trial Transcript, p. 603.). The Waiteks' counsel indicated that they had discussed the court's order with Dr. Dunker, and Dr. Dunker then explained that he had forgotten counsel's admonitions regarding this order in his attempt to discuss his knowledge and medical background, including his experience with the Dalkon Shield.

Upon hearing the arguments of counsel, the court denied the Trust's motion for mistrial, finding that Dr. Dunker's references were irrelevant, but not prejudicial. (Trial Transcript, p. 607.). After an extensive discussion on the record, the Trust indicated that while it was not waiving the issue of mistrial, it would be satisfied with the court's proposed curative instruction. (Trial Transcript, pp. 610–11.). Upon the jury's reentry into the courtroom, the court cautioned the jury, "I'm going to instruct you now to disregard the comment made by the doctor concerning the near-death experience that he had with another patient. That situation isn't relevant to any issue in this lawsuit."

(Trial Transcript, p. 611.).[18]

A trial court has wide discretion in ruling on a motion for a mistrial and will not be overturned absent a manifest abuse of that discretion. *Underwood v. Colonial Penn Ins. Co.*, 888 F.2d 588, 590 (8th Cir. 1989) (citation omitted). Furthermore, a mistrial is a drastic remedy and should not be granted "unless there has been an error so prejudicial that justice could not be served by continuing in the trial and there is no other method by which the prejudice can be removed." *Id.* (district court acted within its discretion in denying mistrial where counsel for insurer referred to insured's alleged refusal to take polygraph in breach of an agreement that this question would not be raised until trial court had researched admissibility of polygraph evidence) (quoting *Arkansas Louisiana Gas Co. v. James*, 692 S.W.2d 761, 768 (Ark.Ct.App.1985)).

In denying counsel's motion for mistrial, the court noted that while the issues in the motion in limine to which Dr. Dunker referred in his testimony were irrelevant, the court's order did not hold that such issues were necessarily prejudicial. Although the court acknowledged that Dr. Dunker's comments violated the court's order, the court found that Dr. Dunker's statements were not prejudicial to the Trust. Upon reviewing the transcript, Dr. Dunker's comments were the only references made by him or any of the Waiteks' witnesses in violation of the court's order. Furthermore, the context in which Dr. Dunker inadvertently mentioned the near-death experience of his patient was his response to counsel's inquiry about his medical background, knowledge, and experience as a gynecologist, as well as his familiarity with the Dalkon Shield. In recalling his experience with the Dalkon Shield, he acknowledged that one of his first encounters with the Dalkon Shield occurred during his tenure as chief of the obstetrics service in Germany, which was also the same time period in which he began to experience serious problems with the Dalkon Shield. (Trial Transcript, p. 598.). In tracing the events

surrounding the Dalkon Shield while he was in Germany, Dr. Dunker inadvertently referred to a prior experience with a patient and the cessation of his department's use of the Dalkon Shield. Under these circumstances, the court finds that Dr. Dunker's statements were not "so prejudicial that justice could not be served by continuing in the trial...." *See Underwood*, 888 F.2d at 590. In light of the Trust's failure to articulate any reasons supporting its broad, conclusory assertion that the statements of Dr. Dunker were "clearly prejudicial" to the Trust, and considering that the court gave a curative instruction, which incorporated language from the Trust's first suggestion of an appropriate instruction and which sufficiently and promptly ordered the jury to disregard the irrelevant comments, the court finds that Dr. Dunker's violation of the court's order regarding the Trust's motion in limine did not warrant a mistrial, and the Trust's motion for new trial based upon the court's alleged error in denying the Trust's motion for mistrial is denied.

## IV. THE TRUST'S MOTION FOR REMITTITUR

Lastly, the Trust has moved for remittitur of the jury's verdict in favor of the Waiteks on the ground that it was excessive. In addition, the Trust has specifically moved for remittitur in the amount of $28,109.31, which is the sum of the amount for the jury's award of adoption expenses and the amount of the jury's award for past hospital and medical expenses which had already been covered by insurance.

The proper role of the federal courts in reviewing the size of a jury verdict is a matter of federal law. *In re Knickerbocker*, 827 F.2d 281, 289 n. 6 (8th Cir.1987); *American Business Interiors, Inc. v. Haworth, Inc.*, 798 F.2d 1135, 1146 (8th Cir. 1986). In weighing the excessiveness of a verdict, the court is guided by the law of the forum state. *In re Knickerbocker*, 827 F.2d at 289. A court should grant remittitur

---

18. Counsel for the Trust indicated that he did not wish to have the court issue a curative instruction read to the jury regarding Dr. Dunker's statement about the Dalkon Shield being taken off the market. (Trial Transcript, p. 610.).

where the verdict is "so grossly excessive as to shock the court's conscience." *American Business Interiors, Inc.*, 798 F.2d at 1146; *see also Triton Corp. v. Hardrives, Inc.*, 85 F.3d 343, 347 (8th Cir.1996) (district court should grant remittitur only when the award is so excessive as to shock the court's conscience); *Norton v. Caremark, Inc.*, 20 F.3d 330, 340 (8th Cir.1994) (citing *American Business Interiors, Inc.*, 798 F.2d at 1146). Recognizing that the trial court has heard the evidence and is familiar with the community's standards, the Eighth Circuit has indicated that it will "review a denial of a remittitur for a 'manifest abuse of discretion,' and will reverse 'only when in rare circumstances [it is] pressed to conclude that the verdict represents a monstrous or shocking injustice.'" *Norton*, 20 F.3d at 340 (citing *American Business Interiors, Inc.*, 798 F.2d at 1146).

■■■ Determining the amount of damages is a function for the jury. *See Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854, 869 (Iowa 1994); *Lee v. Giangreco*, 490 N.W.2d 814, 820 (Iowa 1992) (assessment of damages is a matter left to the sound discretion of the jury) (citing *Olsen v. Drahos*, 229 N.W.2d 741, 742 (Iowa 1975)); *Rattenborg v. Montgomery Elevator Co.*, 438 N.W.2d 602, 607 (Iowa Ct.App.1989). However, the court has the inherent power to set aside a verdict which fails to do substantial justice between the parties. *Spaur*, 510 N.W.2d at 869; *Rees v. O'Malley*, 461 N.W.2d 833, 840 (Iowa 1990) ("[i]f a verdict is so flagrantly excessive that it goes beyond the limits of fair compensation ... and fails to do substantial justice between the parties, it is our duty to correct the error by granting a new trial or requiring a remittitur....") (quoting *Sallis v. Lamansky*, 420 N.W.2d 795, 800–01 (Iowa 1988)); *Moore v. Bailey*, 163 N.W.2d 435, 436 (Iowa 1968). Such a verdict would be one which is

"flagrantly excessive or inadequate, so out of reason so as to shock the conscience, the result of passion or prejudice, or lacking in evidentiary support." *Harsha v. State Sav. Bank*, 346 N.W.2d 791, 799 (Iowa 1984); *see also Spaur*, 510 N.W.2d at 869 (quoting *Harsha*, 346 N.W.2d at 799); *Lee*, 490 N.W.2d at 820 (departure from the jury's assessment of damages is only appropriate "when the verdict is (1) flagrantly excessive or inadequate; (2) so out of reason as to shock the conscience or sense of justice; (3) presumptively the result of passion, prejudice, or other ulterior motive; or (4) lacking in evidentiary support.").

■■■ In light of the testimony regarding Priscilla and Marc Waitek's injuries from both the Waiteks themselves, their friends, Priscilla Waitek's sisters, and Dr. Dunker, along with the evidence presented about the losses they suffered and damages they incurred as a result of Priscilla Waitek's use of the Dalkon Shield, the court finds that the jury's verdict was clearly not excessive.[19] *See Spaur*, 510 N.W.2d at 869; *Lee*, 490 N.W.2d at 820; *Harsha*, 346 N.W.2d at 799. Once the jury had answered the threshold question of causation, there was ample evidence presented to support the amount of damages awarded. Indeed, the substantial evidence in the record on damages could have easily supported a damage award considerably larger than that awarded here. Therefore, the court denies the Trust's motion for remittitur of the jury's verdict on the ground that the verdict was excessive.

In addition, for the reasons stated in Sections II(A)(2)(b) and (c), the court denies the Trust's motion for remittitur of the adoption expenses and the past hospital and medical expenses which were covered by insurance.

---

**19.** Counsel for the Trust contends that comments made by the Waiteks' counsel throughout the trial about the Trust's attorney, Robert Tucker, his Ohio residency, and his position as a lawyer for the Trust, in addition to comments made in closing argument, were clearly inflammatory and resulted in an excessive jury verdict. However, in light of the amounts mentioned by the Waiteks' counsel in closing argument, which included amounts ranging from 1 million to 18 million

dollars, the jury clearly was not so influenced by passion and prejudice allegedly derived from the Waiteks' attorneys' arguments to award an excessive verdict in favor of the plaintiffs. Furthermore, in reference to the Waiteks' counsel's comments in closing arguments, counsel for the Trust objected to those remarks, and the court sustained counsel's objection and ordered the jury to disregard those comments.

## V. CONCLUSION

In its post-trial motions, the Trust raised three grounds for its renewed motion for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(b), regarding the expert opinion on causation in this case, the jury's award of damages for adoption expenses, and the jury's award of damages for past hospital and medical expenses, respectively. Based upon a review of the evidence in the record and the transcript of the case, the court finds that the Trust failed to contemporaneously object to Dr. Dunker's testimony and opinion on causation; thus, the Trust waived its objection to this issue. Because of the Trust's waiver, it is precluded from raising the issue that there was no scientific basis for Dr. Dunker's expert opinion in both its motion for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(b). In the alternative, the court finds that Dr. Dunker's testimony satisfied the touchstones of reliability and relevance under both Federal Rule of Evidence 702 and *Daubert,* and upon viewing the evidence in a light most favorable to the Waiteks, there is sufficient evidence of record to support both Dr. Dunker's opinion on causation and the jury's finding that Priscilla Waitek's use of the Dalkon Shield was a proximate cause of her injuries. In addition, the court concludes that the jury's award of damages for the out-of-pocket expenses of the Waiteks' two adoptions is proper and does not violate public policy. Lastly, the court finds that for the reasons stated in a prior order on the same issue, the Waiteks' recovery of past hospital and medical expenses is not affected by payments of collateral benefits. Therefore, the court denies the Trust's renewed motion for judgment as a matter of law pursuant to *Fed.R.Civ.P.* 50(b) on all three of its asserted grounds.

Similarly, the Trust asserted three grounds for its motion for new trial pursuant to *Fed.R.Civ.P.* 59(a), involving the same issue of the expert's opinion on causation in this case, the court's final jury instruction on proximate cause, and the court's denial of a mistrial following a witness's violation of the court's order regarding the Trust's motion in limine, respectively. For the same reasons asserted above, the court finds that the Trust

has waived its objection to the issue regarding the scientific basis for Dr. Dunker's opinion on causation and thus is precluded from raising it in his motion for new trial. In the alternative, the court concludes that reasonable persons could differ in evaluating the credible evidence presented by the experts testifying on behalf of both parties in this case; therefore, the jury's finding on the issue of causation was not against the greater weight of the evidence. In addition, given the circumstances of the case, the court finds that it was appropriate to instruct the jury fully on the issue of proximate cause, including the optional last sentence of Iowa Uniform Jury Instruction 700.3, which states, "There can be more than one proximate cause of an injury or damage." In the alternative, even if the court's inclusion of the optional last sentence was improper, the Trust failed to show in any way how it was "materially prejudiced" by the inclusion of this sentence in the court's Final Jury Instruction No. 18. Lastly, the court concludes that Dr. Dunker's statements at trial in violation of the court's order regarding the Trust's motion in limine were not prejudicial and did not warrant a mistrial. Thus, the court denies the Trust's motion for new trial pursuant to *Fed.R.Civ.P.* 59(a) on all three asserted grounds.

Finally, the court finds that the jury's verdict, along with its specific awards for adoption expenses and past hospital and medical expenses, did not remotely approach an amount which could be considered excessive. Therefore, the court denies the Trust's motion for remittitur of the jury's verdict.

**IT IS SO ORDERED.**